JOHN K. *et al.*, Plaintiffs-Appellants, v. THE BOARD OF EDUCATION FOR SCHOOL DISTRICT 65, Defendant-Appellee

First District (2nd Division)   No. 86—2231

Opinion filed January 27, 1987.

544

Davis, Barnhill & Galland, of Chicago (George F. Galland, Jr., of counsel), for appellants.

Brydges, Riseborough, Morris, Franke & Miller, of Chicago (Ralph Miller, of counsel), for appellee.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

The instant case involves the question of the right of parents to have access to records pertaining to their child's education. Specifically in this case, John and Mary K., plaintiffs-appellants herein, sought access under the Illinois School Student Records Act (Ill. Rev. Stat. 1985, ch. 122, par. 50—1 *et seq.*) (hereinafter the School Records Act) to their daughter's responses to a Rorschach test administered to her by defendant-appellee school district. Each party filed a motion for summary judgment, and after hearing argument the circuit court granted defendant's request while denying plaintiffs'. The trial judge concluded that the verbatim responses of the child were not "student records" as defined by the School Records Act, but rather were materials maintained by the school psychologist administering the test for her exclusive use. Alternatively, the court held that the responses were confidential under the Illinois Mental Health and Developmental Disabilities Confidentiality Act (Ill. Rev. Stat. 1985, ch. 91½, par. 801

*et seq.*) (hereinafter the Confidentiality Act). Finally, the trial judge held that plaintiffs had an adequate remedy at law, precluding plaintiffs' request for an injunction directing access to the responses. Because we disagree with the circuit court's restrictive view of the requested materials, we reverse.

Plaintiffs, John and Mary K., are patrons of defendant school district, where their child, Jane K., attended school and where Nancy L. was the school's psychologist. Jane K. was twice administered psychological tests by Nancy L., first in April 1982 and again in January 1986. The tests were administered either at plaintiffs' request or with their consent, and included among the tests was one commonly known as the Rorschach, which involves showing the subject of the test a series of standardized inkblots and asking her to describe what she sees. These responses are recorded verbatim by the therapist administering the test, who thereafter interprets them. It was these verbatim answers which plaintiffs sought.

After both tests Nancy L. recommended that psychotherapy be considered by the parents. It does not seem that the recommendation was ever executed. After each of the two tests, Nancy L. reduced Jane K.'s responses to writing and later produced a report summarizing the tests administered, her analysis, and her recommendation.

Mary K. has a doctorate in counselling psychology and is qualified to administer the Rorschach test herself. She asserted that it was necessary to review her daughter's responses to the Rorschach tests in their raw form in order to evaluate both the responses and Nancy's L.'s recommendations. Accordingly, plaintiffs requested access to the raw data in order to obtain such an evaluation. When defendant ultimately refused to permit access to the data, plaintiffs initiated this suit for an injunction, asking that the circuit court order defendant to release the requested data to them.

The threshold question presented on review is whether or not the plaintiffs were entitled to have access to the raw test data of the Rorschach tests administered to their daughter in 1982 and 1986. Both parties requested summary judgment on that question, and it does not appear that there was any genuine issue of material fact unresolved which would preclude such relief to either party. (See *Montes v. Hawkins* (1984), 126 Ill. App. 3d 419, 423, 466 N.E.2d 1271.) Rather, this case presents the purely legal question of the proper construction of the School Records Act. In brief, it is plaintiffs' contention that the data at issue herein falls squarely within the purview of the School Records Act and is accordingly subject to disclosure to them. Defendant conversely maintains that the data is not part of the child's stu-

dent record or is protected from disclosure by certain exclusions and exceptions embraced by the School Records Act, the Confidentiality Act, and Federal regulations.

The School Records Act requires a three-tiered analysis in making the determination called for herein. Initially, the court must determine whether the requested material was part of the "school student record," as therein defined. Assuming the first question is answered affirmatively, the court next must determine whether its classification is altered by certain statutory exclusions to that classification. Finally, if the initial classification remains unchanged, the court must decide whether the material is otherwise sheltered from release by any of the statutory exceptions to disclosure.

The pertinent statutory sections are excerpted below. As to the student record, the statute provides:

> " 'School Student Record' means any writing or other recorded information concerning a student and by which a student may be individually identified, maintained by a school or at its direction or by an employee of a school, regardless of how or where the information is stored. The following shall not be deemed school student records under this Act: writings or other recorded information maintained by an employee of a school or other person at the direction of a school for his or her exclusive use ***." (Ill. Rev. Stat. 1985, ch. 122, par. 50—2(d).)

Patently, any writing about a student which identifies that student is considered part of his or her school student record. Notable is the exclusion of materials otherwise fitting within that broad definition which are maintained by an individual for his own "exclusive use."

The School Records Act goes on to subdivide the record as follows:

> " 'Student Permanent Record' means the minimum personal information necessary to a school in the education of the student and contained in a school student record. Such information may include the student's name, birth date, address, grades and grade level, parents' names and addresses, attendance records, and such other entries as the State Board may require or authorize." (Ill. Rev. Stat. 1985, ch. 122, par. 50—2(e).)

> " 'Student Temporary Record' means all information contained in a school student record but not contained in the student permanent record. Such information may include family background information, intelligence test scores, aptitude test scores, psychological and personality test results, teacher evalu-

ations, and other information of clear relevance to the education of the student, all subject to regulations of the State Board." (Ill. Rev. Stat. 1985, ch. 122, par. 50—2(f).)

Essentially, the garden variety identifying information such as addresses, names, grades, and like data are labelled part of the permanent record. All other information is classified as part of the temporary record. The distinction is significant, in that the ISSRA requires that the student permanent record be maintained "for not less than 60 years after the student has transferred, graduated or otherwise permanently withdrawn from the school." (Ill. Rev. Stat. 1985, ch. 122, par. 50—4(e).) The temporary record, on the other hand, cannot be maintained "beyond its period of usefulness to the student and the school, and in no case longer than 5 years after the student has transferred, graduated or otherwise permanently withdrawn from the school." Ill. Rev. Stat. 1985, ch. 122, par. 50—4(f).

The School Records Act further provides that parents shall be allowed access to the materials contained in the school student record, both permanent and temporary. (Ill. Rev. Stat. 1985, ch. 122, par. 50—5.) Finally, the Act permits but two exceptions to this right of access, quoted below:

"(e) Nothing contained in this section [(Ill. Rev. Stat. 1985, ch. 122, par. 50—5)] shall make available to a parent or student confidential letters and statements of recommendation furnished in connection with applications for employment to a post-secondary educational institution or the receipt of an honor or honorary recognition, provided such letters and statements are not used for purposes other than those for which they were specifically intended ***

\* \* \*

(f) Nothing contained in this Act shall be construed to impair or limit the confidentiality of:

(1) Communications otherwise protected by law as privileged or confidential, including but not limited to, information communicated in confidence to a physician, psychologist or other psychotherapist; or

(2) Information which is communicated by a student or parent in confidence to school personnel." (Ill. Rev. Stat. 1985, ch. 122, pars. 50—5(e), (f).)

The former exception is patently inapplicable herein, and defendant focuses specific attention on the latter.

■ It is obvious that the raw test data falls within the broad definition of school student record contained in the first sentence of sec-

tion 2(d). It consisted of the oral responses of Jane K. to the Rorschach tests administered by Nancy L., which were recorded by Nancy L. Jane K. was obviously identifiable from that record, and Nancy L. maintained that record. Although the verbatim responses were apparently not physically placed in Jane K.'s student record, the School Records Act explicitly states that it was constructively part of the record "regardless of how or where the information is stored." (Ill. Rev. Stat. 1985, ch. 122, par. 50—2(d).) It is also clear that these responses were not of the type generally incorporated in the permanent record; rather, it was of the type which is classified as part of the temporary record.

Notable in the language defining temporary student records is the clause including "psychological and personality test results." (Ill. Rev. Stat. 1985, ch. 122, par. 50—2(f).) Defendant initially maintains that the raw test data do not constitute the test results. Rather, defendant asserts that the test results referenced therein are the summary reports prepared by Nancy L. This assertion is less than persuasive.

Initially, we note that section 2(f)'s definition does not include an exhaustive listing of all materials properly classified as part of the temporary record. It uses the permissive and nonrestrictive term "may include." Thus, even if the raw data were not test results, if they belong in the school student record they fall within the ambit of section 2(f). See *Greyhound Lines, Inc. v. City of Chicago* (1974), 24 Ill. App. 3d 718, 727-28, 321 N.E.2d 293 ("The word 'include' by itself does not connote exclusivity. And while the few Illinois cases seem rather evenly split [citations], the weight of authority ordinarily interprets 'include' as a term of enlargement").

More significantly, the raw data properly should be classified as test results. Three reasons support this conclusion.

First, the Rorschach test is administered by showing the subject a number of standardized inkblots and recording the subject's responses to them. Those responses are thereafter interpreted by the therapist. Common sense dictates that the term "test results" means exactly that: the objective responses elicited from the subject. The interpretation of those results is, almost definitionally, a subjective evaluation rather than an objective result.

Second, the Illinois Administrative Code notes that section 2(f) materials include "[r]eports of psychological evaluations including information on intelligence, personality and academic information obtained through test administration, observation, or interviews." (23 Ill. Admin. Code 375.10 (1986).) The raw data herein was manifestly obtained through test administration. Nancy L.'s report, on the other

hand, was not information, but an evaluation.

■■ ■ Third, and most significantly, section 5(b) (Ill. Rev. Stat. 1985, ch. 122, par. 50—5(b)) allows parents to have a qualified professional "present to interpret the information contained in the student temporary record." If the School Records Act contemplated insulation of the raw test data from disclosure, as urged by defendant, then the prophylaxis of independent professional evaluation provided by section 5(b) would be largely, if not entirely, vitiated. Logically, an opinion is only as valid as the information upon which it is predicated. If that basis were to be wholly sheltered from review, the second professional would find it surpassingly difficult, if not impossible, to make a proper evaluation of his own. Instead, he would be giving an opinion of an opinion. The term "test results" ought not be construed so as to negate the second opinion review contemplated by the School Records Act. See *Braun v. Retirement Board of the Firemen's Annuity & Benefit Fund of Chicago* (1984), 125 Ill. App. 3d 132, 138, 465 N.E.2d 589, *aff'd* (1985), 108 Ill. 2d 119, 483 N.E.2d 8 ("[W]hen construing a statute, a court must not be guided by a single sentence or by an isolated provision. [Citation.] Rather, the statute as a whole must be evaluated, with each provision being construed in connection with every other provision and in light of the statute's general purposes").

As a consequence, we conclude that the raw test data requested must be deemed to be a test result incorporated within the definition of the school student record.

Although the raw data fits the definition, defendant nonetheless urges that it be excluded from the school student record under the "exclusive use" provision of the definition. Defendant claims that the verbatim responses were obtained by Nancy L. for her own usage and that the legislature intentionally exempted such materials from the record.

■■ ■ The exact language at issue herein was not specifically defined by the legislature in the School Records Act. Generally, where the legislature has not defined a term, it is assumed that the term was intended to have its ordinary and popularly understood meaning, unless to do so would defeat the perceived legislative intent. (*Droste v. Kerner* (1966), 34 Ill. 2d 495, 217 N.E.2d 73.) In the context of the statute herein, we believe that materials in the nature of a subject's responses to psychological tests cannot be deemed "exclusive use" materials.

Plaintiffs suggest that a document is considered one maintained for the exclusive use of the holder where it was created for that individual's benefit. In this instance, the raw data was not created for

Nancy L.'s benefit. It was created for the purpose of evaluating Jane K. Hence, plaintiffs claim that it was outside the ambit of the exclusive-use exemption.

In support, plaintiffs assert that journals, diaries, or like documents created by teachers or therapists for personal or professional growth are exclusive-use documents and that the data requested herein bears no resemblance to such materials. Rather, the Rorschach responses were given in connection with work performed by Nancy L. as a school psychologist, for the purpose of performing her professional obligation to Jane K. and the school district. Proprietary interests could be expressed by the district, Jane K., or plaintiffs; Nancy L. had no such interest. Plaintiffs also eschew any resort to the school district's guidelines, or the American Psychological Association's standards, claiming that such authorities cannot supersede or control a situation subject to the provisions of the School Records Act.

Defendant relies on the above-noted materials in support of its refusal to disclose, and further cites the Confidentiality Act. That act provides, *inter alia*, that "confidential communications" are those made by a recipient of mental-health or disability treatment, or by other persons to the therapist during or in connection with such treatment; that such services include examination, diagnosis and treatment; and that those notes cannot be disclosed under the act. Ill. Rev. Stat. 1985, ch. 91½, par. 802.

Allowing that the actual test responses be the exclusive-use property of the therapist would, in our view, negate significant aspects of the School Records Act. The entire scheme of the act evinces the clear legislative intent to open student records to legitimately interested parties, particularly parents and students, so as to better protect their interest in records kept by schools regarding students, and to insure the right of those interested parties to challenge objectionable or erroneous information contained in school student records.

Adopting defendant's interpretation would do violence to the scheme. The Rorschach test was administered to Jane K. with her parents' consent in order to evaluate her specific needs. It was not taken by Nancy L. for her own purposes. Nancy L. used it for the evaluation and prepared a report summarizing her testing and recommendation. That report was, and is, subject to disclosure. It is convoluted logic which construes the report, based in part on the test results, as an open document subject to disclosure, but holds that the basis of that report is forever protected from view.

The School Records Act permits parents access to student records (Ill. Rev. Stat. 1985, ch. 122, par. 50—5(a)), the right to professional

review of the data contained in the record (Ill. Rev. Stat. 1985, ch. 122, par. 50—5(b)), the right to challenge material in the record (Ill. Rev. Stat. 1985, ch. 122, par. 50—7(a)), and creates a right to injunctive relief for violations of the Act (Ill. Rev. Stat. 1985, ch. 122, par. 50—9). If information may be sheltered from disclosure merely by retaining it in the therapist's hands under the guise of exclusive use, then the scheme created by the School Records Act would be emasculated. Saying that the Rorschach test responses were exclusive-use properties does not make it so, particularly where, as here, treating it in such a manner renders other portions of the School Records Act inoperative. Another professional could not competently review Nancy L.'s report without access to the predicate data. Accordingly, the raw data cannot be construed as Nancy L.'s exclusive property.

Defendant's recitation of Federal provisions and of professional standards does not undermine this conclusion. As to the former, the applicable Federal provisions use the term "education record" and specifically allow parents access to those records. (20 U.S.C. sec. 1232g(a)(1)(A) (1982).) The material at issue herein was patently included within the education record as defined therein. (20 U.S.C. sec. 1232g(a)(4)(A) (1982).) It follows that the data was subject to disclosure. The professional standards (and the school district policy) simply cannot override the School Records Act or the Federal provisions, if in fact defendant's construction of them were to be adopted.

■ The final prong of the School Records Act analysis turns on whether the information requested can be construed as falling within the statutory exception to disclosure contained in section 5(f) (Ill. Rev. Stat. 1985, ch. 122, par. 50—5(f)). That section exempts from disclosure information protected by law as privileged or confidential.

Defendant refers to the Confidentiality Act in support of its contention that the results legally cannot be disclosed. The Act defines confidential information as that received by a therapist in connection with providing mental-health services and extends to information obtained from the subject as well as that gathered from third parties. (Ill. Rev. Stat. 1985, ch. 91½, par. 802(1).) It defines the therapist's mental-health services to include diagnostic testing and evaluation. (Ill. Rev. Stat. 1985, ch. 91½, par. 802(3).) It further defines the therapist's personal notes as including (a) information disclosed to the therapist in confidence about the subject by third parties on condition that it not be disclosed to the subject, (b) information disclosed to the therapist by the subject that would be injurious if disclosed to other persons, and (c) the therapist's speculations, hunches, impressions, and reminders. (Ill. Rev. Stat. 1985, ch. 91½, par. 802(4).) Personal

notes are excluded from the Confidentiality Act definition of "record." (Ill. Rev. Stat. 1985, ch. 91½, par. 802(7).) The Act further provides that all records and communications are confidential and shall not be disclosed except as provided therein. (Ill. Rev. Stat. 1985, ch. 91½, par. 803(a).) Finally, the Confidentiality Act provides for a right of access as follows:

> "(a) The following persons or entities shall be entitled, upon request, to inspect and copy a recipient's record or any part thereof:
>
> * * *
>
> (4) the parent or guardian of a recipient who is at least 12 but under 18 years, if the recipient is informed and does not object or if the therapist does not find that there are compelling reasons for denying such access. ***" (Ill. Rev. Stat. 1985, ch. 91½, par. 804(a).)

Plaintiffs herein were Jane K.'s parents, Jane K. did not object to disclosure of the subject data, and Jane K. was, at all relevant times (and still is) between 12 and 18 years of age. Thus, although the material is confidential in nature, it was still subject to disclosure under the Confidentiality Act.

Our conclusion is unaffected by the Confidentiality Act exclusion of a therapist's "personal notes." This argument is nothing more than a recycling of defendant's exclusive-use analysis, which we have already rejected. Moreover, the Act defines that term in such a manner as to preclude disclosure of information obtained from third parties to the parents or subject, and to prevent disclosure of information obtained from the subject to third parties. It does not preclude disclosure of information obtained from the subject to the subject. Nor can we consider the verbatim transcript of Jane K.'s responses as Nancy L.'s speculations, reminders, hunches or impressions.

It follows that since the Confidentiality Act presumes the right of parents to the materials sought herein, the School Records Act does not prevent disclosure.

In reaching this conclusion, we are cognizant of the concerns expressed by the circuit court and by defendant. Specifically, the court was mindful of the importance of the testing process itself and the effect disclosure might have on the efficacy of that process. While these concerns are significant, the balance between that confidentiality, the parents' right of access, and the therapist's interests has already been struck by the legislature, which formalized that balance in the School Records Act. It is not our prerogative to alter that balance.

Given that plaintiffs' right to access was violated by defendant's

refusal to disclose the requested data, we must next address the circuit court's conclusion that an injunction was improvident given plaintiffs' purportedly adequate remedy at law. Specifically, we refer to what is known as the parents' "due process hearing," contained in article 14 of the School Code (Ill. Rev. Stat. 1985, ch. 122, par. 14—8.02). We cannot agree with the trial judge's conclusion.

■ The School Records Act, after defining terms and creating the parental right of access, allows for both challenges to materials contained in the school student record (Ill. Rev. Stat. 1985, ch. 122, par. 50—7) and for actions addressing violations of the provisions of the School Records Act (Ill. Rev. Stat. 1985, ch. 122, par. 50—9). The former provision is irrelevant herein, for it presupposes that parents have already been permitted access to their child's record; it is directed toward the parents' right to dispute the accuracy, relevancy, or propriety of entries in their child's record. Logically, parents could not contest such matters if they were unaware of the contents of the record. The latter provision is particularly relevant, however. It states, *inter alia*, that "[a]ny person aggrieved by any violation of this Act may institute an action for injunctive relief in the Circuit Court of the County in which the violation has occurred or in the Circuit Court of the County in which the school is located." (Ill. Rev. Stat. 1985, ch. 122, par. 50—9(a).) This is precisely what John and Mary K. sought to do herein. We cannot fault them for attempting to do that which the School Records Act induced them, and indeed directed them, to do.

Overall, the School Records Act manifests the legislature's intent to create a parental right of access to matters contained in their children's school records and to permit them the right to contest the accuracy, relevancy, and propriety of those records. The legislature established two specific means to enforce these rights: a hearing where parents may challenge information in the record and an injunctive right to correct violations of the School Records Act. Plaintiffs complied with the statute, they sought access to materials that the Act provides a right to inspect, and they properly moved for an injunction when defendant abrogated their right of access. Defendants wish that the right of access allowed by the Act be read narrowly. Since the overall scheme of the School Records Act is to permit a broad right of access with narrow exceptions, we must reject their contention and reverse the circuit court.

In doing so, we emphasize the narrowness of our decision. Plaintiffs have sought only the verbatim transcript of Jane K.'s Rorschach responses, for the purpose of obtaining a second professional opinion on the efficacy of Nancy L.'s recommendation. This second opinion is

explicitly contemplated by the School Records Act. Under these circumstances, defendant was obligated by the Act to disclose those responses. We voice no opinion as to access to any other materials which these plaintiffs may, eventually, request.

For the above stated reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

BILANDIC and HARTMAN, JJ., concur.