William **SIECK** and Mary Pat Sieck, for and on Behalf of their minor son, James **SIECK**, Plaintiffs,

v.

**OAK PARK–RIVER FOREST HIGH SCHOOL DISTRICT NO. 200, Jayson Strode, Bunny Carey, William Cragg, Wanda V. Cornelius, Alice M. Ralph, Nancy Smiley, Dr. George A. Gustafson and Dr. Larry V. Walker, Defendants.**

No. 91 C 1170.

United States District Court, N.D. Illinois, E.D.

July 27, 1992.

Gene L. Armstrong, Cichocki & Armstrong, Ltd., Oak Park, Ill., John S. Elson, Northwestern University School Of Law, Legal Clinic, Chicago, Ill., for plaintiffs.

Richard T. Wimmer, Dennis G. Walsh, Philippe R. Weiss, Bruce C. Mackey, Klein, Thorpe & Jenkins, Ltd., John Alexis Relias, James J. Zuehl, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

On February 28, 1990, Oak Park–River Forest High School suspended Jamie Sieck for a period of ten days on charges of theft. His parents, William and Mary Sieck, on behalf of their son, are suing the District, the Board of Education, and several school officials. They seek recovery for violations of constitutional and civil rights protected by the Fifth and Fourteenth Amendments to the Constitution and by 42 U.S.C. §§ 1983 and 1988. They are also seeking recovery on a supplemental state claim for negligently distributing Jamie's suspension memorandum in violation of the Illinois School Student Records Act. The defendants have moved for summary judgement on the complaint. For the reasons discussed below, the court denies the motion for summary judgment.

### Background

These are the undisputed facts: On February 26, 1990, Jamie Sieck and Jay Lind, students at the Oak Park–River Forest High School, entered the faculty lounge, where Jamie purchased at least one can of soda. On leaving the lounge, two staff members, Dolores Marino and Mildred Floyd, noticed that he was carrying two cans of soda. Mrs. Marino directed him to stop and then confiscated both cans. She accused Jamie of stealing the soda from a beverage serving cart which had been prepared for an after-school faculty meeting. Jamie denied the allegation of theft and went to speak with Dean Mathies.

Dean Mathies turned the incident over to Dr. Walker, the District's Associate Superintendent for Pupil Services, who asked to meet with Jamie and his parents. On February 28, 1990, Jamie and his father William Sieck met with Dr. Walker. At the

meeting, both Mrs. Marino and Jamie were asked to describe their versions of the incident. After Jamie again denied stealing the soda, Dr. Walker took the participants to the faculty lounge to recreate the incident.

Dr. Walker's statements after the reenactment are in dispute. Plaintiffs allege that Dr. Walker told Jamie he would have to prove his innocence. They also claim that Dr. Walker said that Jamie would have to be suspended because of the school's practice of automatically suspending students accused of theft regardless of whether they admit or deny the crime. Since the Board of Education was to meet that evening, Dr. Walker said he would ask the Board whether it wanted to follow that practice in this case.

The Board approved Jamie's suspension at the meeting. On the following day, the High School's administrative office circulated a memorandum to selected staff members which reported that Jamie had been suspended from school for theft. Plaintiffs state that shortly thereafter, a student who had seen the memorandum spread word of its contents among the students, faculty and staff at the High School (it was apparently the school's practice to use students to retrieve and deliver teacher mail and that mail frequently included disciplinary notices that were neither sealed nor labeled confidential).[1]

On March 2, 1990, the High School principal, Dr. Gustafson, sent a letter to the plaintiffs informing them that he had recommended expulsion for Jamie and that the Board would hold a formal hearing on March 6. Following the hearing however, the Board elected to withdraw the expulsion recommendation, rescind the suspension, and expunge Jamie's record. Jamie was allowed back in school on March 7, 1990, after having served three days of the suspension.

*Discussion*

Rule 56 of the Federal Rules of Civil Procedure requires this court to enter summary judgement upon either party's motion "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to a judgement as a matter of law." See generally *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When there is enough evidence in favor of the non-movant that a jury could reasonably return a verdict for that party, a "genuine issue" exists and summary judgement is not appropriate. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). This court's task, therefore, is to determine which facts are material in light of the relevant law, and then whether any of those facts are in issue.

*A. Count I*

First, the court turns to the law governing claims of procedural due process violations. The Fourteenth Amendment forbids the State to deprive any person of life, liberty, or property without due process of law. Protected property interests are not normally created by the Constitution, "[r]ather, they are created and their dimensions are defined by an independent source such as state statutes or rules entitling the citizen to certain benefits." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The courts have employed a two-step analysis in determining whether or not a state has violated an individual's right to procedural due process. *Colon v. Schneider,* 899 F.2d 660, 666 (7th Cir.1990).

The first step is to determine whether the plaintiff had a liberty or property interest with which the state has interfered. *Id.* If so, the court must then determine whether the "entity responsible for the alleged

---

**1.** Plaintiffs make this claim in their response to defendants' Rule 12(m) statement of uncontested facts. They cite as support William Sieck's affidavit. Whatever the competence of Mr. Sieck to testify regarding school practices, the defendants have failed to formally contest the "fact" his affidavit supports. Accordingly, for purposes of this motion, the court accepts this fact as uncontested.

deprivation instituted constitutionally sufficient procedural protections." *Id.* (citing *Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989)); *See also Shango v. Jurich,* 681 F.2d 1091, 1097–1098 (7th Cir.1982). Thus, plaintiffs may establish a "prima facie" case of a due process violation if they can show that Jamie had a property interest in receiving an education and that the school's suspension policy improperly interfered with that interest.

■ Entitlement to a public education has long been recognized as a fundamental property interest:

Among other things, the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause.

*Goss v. Lopez,* 419 U.S. 565, 573–575, 95 S.Ct. 729, 735–736, 42 L.Ed.2d 725 (1975). Thus, it is clearly established that Jamie had a Constitutional right to a public education.

■ Defendants maintain, however, that they established procedural safeguards to ensure that Jamie's due process rights were not violated. Due process for a ten day suspension requires that the school give the student both notice of the charges against him and an opportunity to be heard. *Goss,* 419 U.S. at 579, 95 S.Ct. at 738. Defendants claim that they satisfied *Goss* by giving Jamie an opportunity to be heard at his presuspension hearing with Dr. Walker.

Plaintiffs, on the other hand, contend that defendants acted contrary to the spirit and substance of *Goss.* They claim that the District maintains a policy of suspending all students who are *accused* of theft, whether the students admit or deny the accusation. They have offered evidence, the official transcript of Jamie Sieck's expulsion hearing, to substantiate their claim. The testimony of Dr. Walker on pages 35–36 of the transcript supports the finding

that the defendants had an unwritten policy that any student accused of theft must face a mandatory suspension:

MR. ARMSTRONG: Now, it is not a requirement in any policy that I've seen in the handbook that you provided to me that suspension is mandatory in an instance where a student is accused of theft. Is suspension mandatory in that circumstance?

DR. WALKER: Yes, it is. It is not written, but it is required.

MR. ARMSTRONG: So there is an unwritten official policy of the school board that a student accused of theft must be suspended.

DR. WALKER: That is correct, yes. That is a procedure by which we have operated the eight years that I have been here.

Plaintiffs' Memorandum In Opposition to Defendants' Motion For Summary Judgement, Exhibit G—Transcription of Jamie Sieck Hearing, March 6, 1990, pp. 35–36. This transcript puts in issue defendants' claim that "a student who is charged with theft and denies the charge *may* be suspended for ten days and expulsion may be recommended *if after the presuspension interview the appropriate school official determines that there is cause to believe the student committed the offense.* Defendants' Answer, Count I—p. 29, ¶ 78 (emphasis supplied).

The transcript excerpt quoted above supports the argument that Dr. Walker and the Board would have suspended Jamie notwithstanding any evidence that might have been presented on his behalf at the presuspension hearing. If the decision to suspend was made before the hearing, the hearing procedure would lack the basic due process requirement that it be "meaningful". *Armstrong v. Manzo,* 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); *See also Cameo Convalescent Center, Inc. v. Senn,* 738 F.2d 836, 843 (7th Cir.1984). A hearing should be "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges … are true and support the proposed action."

*Cleveland Board of Education v. Louder-mill,* 470 U.S. 532, 545–546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985); *See also Bell v. Burson,* 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90 (1971) ("It is a proposition which hardly seems to need explication that a hearing which excludes consideration of an element essential to the decision" would not be a meaningful hearing.) The question whether the hearing Jamie received met that minimal standard is in issue. Accordingly, defendants' motion for summary judgement on Count I is denied.

## B. Count II

■ Turning to Count II of the complaint, defendants contest the classification of the March 1st suspension memorandum as a "school record." The determination of whether or not the suspension memorandum is a school record presents a purely legal question; the proper construction of the Illinois School Student Records Act (Ill. Rev.Stat.1985, ch. 122, ¶ 50–1 *et seq.,* hereinafter, ISSRA). *John K. v. Board of Education,* 152 Ill.App.3d 543, 545, 105 Ill.Dec. 512, 504 N.E.2d 797 (1st Dist.1987). The ISSRA defines a "School Student Record" as:

> [A]ny writing or other recorded information concerning a student and by which a student may be individually identified, maintained by a school or at its direction or by an employee of a school, regardless of how or where the information is stored. The following shall not be deemed school student records under this Act: writings or other recorded information maintained by an employee of a school or other person at the direction of a school for his or her exclusive use ... (Ill.Rev.Stat.1985, ch. 122, ¶ 50–2(d).)

The Illinois Appellate Court has held that any writing about a student which identifies that student is considered a part of their school student record. *John K.,* 152 Ill.App.3d at 546, 105 Ill.Dec. 512, 504 N.E.2d 797. In addition, the Illinois Administrative Code has defined the "Student Temporary Record"[2] to include all "disciplinary information", a category under which suspension falls. 23 Ill.Admin.Code 375.10 (1991). Defendants, in their answer, acknowledge that they prepared a memorandum that named Jamie and reported that he would be suspended from the school for a specified period of time. Defendants' Answer, Count II—p. 35, ¶ 15. This memorandum is therefore a school record.

■ As for proof of negligence, it is true that plaintiffs did not plead specific facts relating to the release and distribution of the memorandum. However, plaintiffs, in their response to defendants' motion for summary judgement, have offered facts which raise a genuine issue with regard to the question of defendants' negligence. Plaintiffs claim that students were allowed access to teachers' mailboxes and were often sent to retrieve teacher mail which included notices that were neither sealed nor confidentially labeled. Because these allegations are sufficient to put into issue the question of defendants' negligence, summary judgement is not appropriate.

## Conclusion

As discussed above, the court is denying defendants' motion for summary judgment. The court is compelled, nonetheless, to note that this case should never have proceeded as far as it has, and the fact that it has gone this far is more a tribute to the intractable stance adopted by each side than to the actual merits of this case. It appears, from the papers filed in this court as well as from the discussions the court has had with the parties during numerous settlement conferences, that neither side has acted entirely reasonably. The defendants suspended a child, who after a year's illness had returned to school only a week earlier, on an apparently unsubstantiated charge of theft—and the alleged theft itself was of a fifty-cent can of soda. Plaintiff, on the other hand, has refused reason-

---

**2.** The "Student Temporary Record" is defined as all of the information contained in a school student record but not contained in the student permanent record. Ill.Rev.Stat.1985, ch. 122, ¶ 50–2(f).

able offers of settlement, preferring instead to treat the case as a crusade.

Defendants, of course, have a right to set disciplinary standards and rules within the boundaries of the Constitution and plaintiffs have a right to proceed to trial without accepting even reasonable offers of settlement. The court, however, also has a right to comment on what seems to be a poor use of its limited resources.

Defendants' motion for summary judgement is denied.