SIXTH DIVISION

February 27, 2004

No. 1-02-3839

ANTOINETTE L. JENKINS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

v. )

) No. 02 L 50808

THE DEPARTMENT OF EMPLOYMENT )

SECURITY, GERTRUDE JORDAN, BOARD OF )

REVIEW, PILOT CORPORATION, ) Honorable

) Joanne L. Lanigan,

Defendants-Appellees. ) Judge Presiding.

JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Plaintiff, Antoinette L. Jenkins, appeals from an order of the circuit court of Cook County affirming the decision of the Illinois Department of Employment Security Board of Review (Board) denying her claim for unemployment insurance benefits under the Unemployment Insurance Act.  820 ILCS 405/100 
et seq.
 (West 2002).  For the reasons stated below, we reverse.

The facts of this case are undisputed.  Plaintiff was employed full time with Pilot Corporation (Pilot) in Bloomington, Illinois, from December 16, 1996, to July 27, 2001, as a cashier.  Plaintiff left Pilot in order to relocate to Chicago to take care of her ailing father, Jerry Jenkins (Jenkins), who suffered from numerous health problems.  Plaintiff told Pilot she was relocating to take care of Jenkins and gave two weeks' notice.  Plaintiff left Pilot on good terms.

When plaintiff returned to Chicago she filed for benefits under the Unemployment Insurance Act.  On September 8, 2001, plaintiff was found ineligible for unemployment insurance benefits.  Plaintiff, 
pro se
, timely appealed that decision.  On October 19, 2001, a hearing was held via telephone before referee Frank Kaitis.  During that hearing, the following testimony took place:

"REFEREE KAITIS: Okay, now ma'am, you said your father was sick.  What was wrong with him?

PLAINTIFF: My father has heart trouble.  He's had several strokes.

REFEREE KAITIS: Okay.  Was he under the care of the doctor?

PLAINTIFF: Yes, he goes back to the doctor (inaudible).

***

REFEREE KAITIS: Okay, now ma'am, did any doctor advise you to leave the job to take care of your dad?

PLAINTIFF: Did any doctor?  No."

During the hearing, Rick Kallsen, general manager of Pilot, stated plaintiff "left on good terms, gave two weeks' notice, and just left on good terms."  In his decision, referee Kaitis found that plaintiff "testified that she was not advised by any Doctor to leave her position in order to care for her father."  Referee Kaitis concluded plaintiff was ineligible for unemployment benefits.

Plaintiff, represented by counsel, appealed to the Board.  Plaintiff provided the Board with an affidavit and a letter from Dr. Meisner, her father's physician.
(footnote: 1)  Plaintiff's affidavit indicated, in part, that (1) Jenkins had several small strokes in early 2001, which impaired his memory and speech, (2) Jenkins had heart trouble and poor vision, (3) Jenkins was attacked and sustained a head injury in June 2001, which worsened his speech and memory problems, and (4) because plaintiff was the only member of her family who could take care of Jenkins, plaintiff left Bloomington to return to Chicago.  Plaintiff's affidavit indicated Dr. Meisner wrote the letter on December 18, 2001, though the letter itself is undated.  Dr. Meisner's letter stated, in part, "[Plaintiff] is the daughter of my patient Mr. Jerry Jenkins.  She has moved home to help assist her father who does have multiple medical problems.  Because of his dementia and inability to carry out all household tasks, she does need to assist him in these activities." 

The Board adopted referee Kaitis's factual conclusions and affirmed the denial of unemployment insurance benefits.  The Board found plaintiff "left work for personal reasons unrelated to the employer and did not advise the employer that she left work on the advice of a licensed and practicing physician to provide care for her elderly, ailing parent."

Plaintiff timely appealed the Board's decision in the circuit court of Cook County in accordance with the Administrative Review Law.  735 ILCS 5/3-101 
et seq
. (West 2002).  The circuit court affirmed the Board's decision. 

Plaintiff appeals, contending that the Board erroneously found her ineligible for unemployment benefits by requiring her to show (1) that a licensed and practicing physician advised her that she needed to leave her job to take care of Jenkins, and (2) that she told Pilot her reason for leaving was because a licensed and practicing physician advised her to leave her job to take care of Jenkins. 

The Unemployment Insurance Act (Act) (820 ILCS 405/100 
et seq.
 (West 2002)) was enacted to benefit persons who become unemployed through no fault of their own.  
Jones v. Department of Employment Security
, 276 Ill. App. 3d 281, 284 (1995).  The individual claiming unemployment insurance benefits has the burden of establishing his or her eligibility.  
Zbiegien v. Department of Labor
, 156 Ill. App. 3d 395, 399 (1987).  Illinois courts must construe the Act liberally in favor of awarding benefits.  
Wrobel v. Illinois Department of Employment Security
, 344 Ill. App. 3d 533, 536 (2003); 
Flex v. Department of Labor
, 125 Ill. App. 3d 1021, 1024 (1984).  Generally, an individual is ineligible for benefits under the Act if he "has left work voluntarily without good cause attributable" to his employer.  820 ILCS 405/601(A) (West 2002).  However, certain exceptions to this rule exist, and an individual may still be eligible for benefits if he left his employment voluntarily.  820 ILCS 405/601(B) (West 2002).  Section 601(B)(1) of the Act provides that an individual who voluntarily left work is eligible for benefits if that individual left work:

"Because he is deemed physically unable to perform his work by a licensed and practicing physician, or has left work voluntarily upon the advice of a licensed and practicing physician that assistance is necessary for the purpose of caring for his spouse, child, or parent who is in poor physical health and such assistance will not allow him to perform the usual and customary duties of his employment, and he has notified the employing unit of the reasons for his absence[.]"  820 ILCS 405/601(B)(1) (West 2002).

The parties disagree about the standard of review applicable to this case.  Plaintiff frames the issue as a question of law, namely, whether the Board correctly interpreted the statutory language of section 601(B)(1), and therefore asserts that we must review the Board's decision 
de novo
.  See 
Carpetland U.S.A., Inc. v. Illinois Department of Employment Security
, 201 Ill. 2d 351, 369 (2002).  The Board, on the other hand, argues that the issue is a mixed question of fact and law, namely, whether the Board correctly applied the law to a certain set of facts, and therefore asserts we must apply the "clearly erroneous" standard.  See 
AMF Messenger Service, Inc. v. Department of Employment Security
, 198 Ill. 2d 380, 395 (2001).  Although the Board is the trier of fact and we must defer to its factual findings unless they are against the manifest weight of the evidence, "we owe no deference to the Board's conclusions of law."  
Wrobel
, 344 Ill. App. 3d at 536.  In the case at bar, we are concerned only with the Board's construction of the Act, and thus face only a question of law.  We will therefore review 
de novo
 the Board's decision.

Plaintiff argues that the Board erroneously interpreted section 601(B)(1) to require her to establish that a licensed and practicing physician advised her to leave her job to take care of her ailing father.  Plaintiff, relying on 
Flex
, 125 Ill. App. 3d 1021, argues that section 601(B)(1) does not so require. 

In 
Flex
, the plaintiff left her job after giving birth to a disabled son.  The plaintiff's claim for benefits under the Act was denied.  The plaintiff appealed and presented the Board with a letter from her son's pediatrician detailing his medical problems and advising " '[i]t is important that [the plaintiff] spend as much time with [her son] as possible.' "  
Flex
, 125 Ill. App. 3d at 1023.  The Board affirmed the denial of benefits.  The circuit court, relying on section 601(B)(1), reversed and the Board appealed.  On appeal, the Board argued that section 601(B)(1) did not apply because the letter from the pediatrician "did not specifically state that caring for her disabled child made it impossible for her to continue her employment."  
Flex
, 125 Ill. App. 3d at 1024.  The Board argued that section 601(B)(1) required (1) that an ill family member be in need of assistance, and (2) that such assistance prevent the employee from performing the customary duties of his job.  The Board argued that the pediatrician's letter established the first requirement, but did not establish the second.  This court rejected the Board's interpretation and agreed with that of the plaintiff.  Noting that courts were bound to construe the Act in favor of awarding benefits, the 
Flex
 court agreed that "the physician must state only that assistance is necessary to care for the ill child and that, independent of the physician's statement, the assistance must be such as to preclude the claimant from performing the duties of his job."  
Flex
, 125 Ill. App. 3d at 1024.  The court found that a physician is an expert on the type of assistance necessary to care for his patients, but "[an] opinion on how such assistance will effect the parent's job duties is wholly outside his area of expertise and should not be required as a predicate for the award of benefits."  
Flex
, 125 Ill. App. 3d at 1024.

In the case at bar, the Board's interpretation of section 601(B)(1), similar to that advocated by the Board in 
Flex
, requires that a doctor specifically advise the employee that he must leave his job to care for the ailing family member.  The Board further argues the letter from Dr. Meisner is insufficient, relying on 
Dubinin v. Ward
, 137 Ill. App. 3d 281 (1985), and 
Zbiegien
, 156 Ill. App. 3d 395, to support its argument.

Both 
Dubinin
 and 
Zbiegien
 apply to the first portion of section 601(B)(1), or when an employee leaves work "[b]ecause he is deemed physically unable to perform his work by a licensed and practicing physician."  820 ILCS 405/601(B)(1) (West 2002).  Both cases involve whether a statement from the employee's doctor sufficiently indicated that the employee's own illness made him unable to perform his job.  In both cases, the doctor's statement made clear that the employee could still continue working.  We thus find these cases inapplicable to the case at bar. 

Applying 
Flex
, we agree with plaintiff that the Board improperly construed section 601(B)(1) to require that a doctor must have specifically advised plaintiff to leave her job to assist Jenkins.  As indicated in 
Flex
, section 601(B)(1) requires a doctor to advise that the parent, child, or spouse is in need of assistance.  
Flex
 makes clear that the issue of whether an employee must leave his job to tend to an ailing family member is independent of whether that family member is in need of assistance.  Following the logic of 
Flex
, we conclude that the Board erroneously found that plaintiff was required to show that a doctor specifically advised her to leave her job in order to assist her father.  It follows that the Board erroneously construed section 601(B)(1) to require that plaintiff specifically tell Pilot that her reason for leaving was because a licensed and practicing physician told her she needed to leave her job to assist her father.  Plaintiff adequately informed Pilot that she was leaving to relocate to Chicago to take care of Jenkins.

Plaintiff has satisfied the requirements of section 601(B)(1).  She provided the Board with a letter from her father's physician indicating Jenkins (1) suffered from "multiple medical problems" including dementia, (2) was unable "to carry out all household tasks," and (3) needed assistance in these household tasks.  Plaintiff further explained that it was because of Jenkins' medical problems that she needed to relocate to Chicago from Bloomington. 

Accordingly, for these reasons, the judgment of the circuit court is reversed.

Reversed.

O'MARA FROSSARD, P.J., and GALLAGHER, J., concur.

FOOTNOTES
1: Plaintiff submitted the affidavit and letter by filing a "Request to Submit Additional Evidence" with the Board.