2022 IL App (1st) 211198-U

No. 1-21-1198

Order filed August 4, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| CARLA BURNETT-WEST, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 L 50012 |
| | ) | |
| THE DEPARTMENT OF EMPLOYMENT SECURITY, | ) | |
| THE DIRECTOR OF EMPLOYMENT SECURITY, THE | ) | |
| BOARD OF REVIEW OF THE DEPARTMENT OF | ) | |
| EMPLOYMENT SECURITY, AND ASSOCIATION | ) | |
| HOUSE-CHICAGO, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (The Department of Employment Security, The Director | ) | |
| of Employment Security, and The Board of Review of the | ) | |
| Department of Employment Security, | ) | Honorable |
| | ) | Daniel P. Duffy, |
| Defendants-Appellants). | ) | Judge, presiding. |

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The decision of the Illinois Department of Employment Security Board of Review that plaintiff was ineligible for unemployment benefits because she was discharged for misconduct was not clearly erroneous; circuit court judgment reversed.

¶ 2    Defendants, the Illinois Department of Employment Security (IDES), the IDES Director, and the IDES Board of Review (Board), appeal from an order of the circuit court of Cook County reversing the Board's denial of plaintiff Carla Burnett-West's claim for unemployment benefits.[1] Although the appellee has not filed a response brief in this court, we may proceed under the principles set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976), and have ordered the appeal taken on defendants' brief and the record alone. On appeal from the circuit court's reversal, defendants contend that the Board's finding that plaintiff was ineligible for unemployment benefits because she was discharged for misconduct was not clearly erroneous. For the reasons that follow, we reverse the circuit court's judgment and affirm the Board's decision.

¶ 3    Plaintiff worked for Association House-Chicago (Association House) as an office clerk for the HIV outreach and testing program. She was hired on May 31, 2007, and discharged effective July 1, 2019.

¶ 4    On July 3, 2019, plaintiff applied for unemployment benefits with IDES. As part of her application, she completed a "Misconduct Questionnaire," in which she wrote that her employer had a rule of "no verbal altercation or threats to other coworkers" and acknowledged that she was aware she could be discharged for not complying with the rule. Association House protested the application, stating that plaintiff was discharged for willful and deliberate violation of known and

_____

[1] An additional defendant in the proceedings below, Association House-Chicago, is not a party to this appeal.

reasonable company policy, "specifically due to verbal abuse and breach of employee confidentiality."

¶ 5 A claims adjudicator for IDES attempted to contact plaintiff and Association House for interviews, but was unable to reach either by telephone. On July 22, 2019, the claims adjudicator made a determination, based on plaintiff's application and Association House's protest, that because plaintiff was discharged for misconduct connected with work, she was ineligible for unemployment benefits under section 602(A) of the Unemployment Insurance Act (Act) (820 ILCS 405/602(A) (West 2018)).

¶ 6 Plaintiff appealed, and a telephone hearing was scheduled to take place before an IDES referee on August 20, 2019. In advance of the hearing, Association House provided IDES with several documents, including a termination letter; written statements from plaintiff, Carla Davis, and others regarding the incident that led to plaintiff's termination; excerpts from the employee handbook; and a form plaintiff signed in 2016, acknowledging receipt of the handbook. Relevant here, the handbook provided that inappropriate behavior and conduct that could lead to termination of employment included "[v]erbal or physical abuse of a participant or employee" and "[b]reach of participant or employee confidentiality."

¶ 7 At the hearing, Julia Rodriguez, Association House's vice president, testified that she made the decision to dismiss plaintiff because she had engaged in unprofessional conduct and had breached the confidentiality of a coworker. It had been reported to Rodriguez that during an off-site training event on June 25, 2019, plaintiff argued with Davis, the coworker in question. The argument started when plaintiff became upset that Davis had "cut in line." Davis left the event, but plaintiff followed her outside and continued the confrontation. At some point, plaintiff said

something to Davis along the lines of, "[Y]ou spit on me or you spit in my face, my mouth. You infected me, contaminated me." The confrontation was loud and the women were "in each other's faces." Eventually, police or security became involved. It was further reported to Rodriguez that the conflict continued at the office the next day, when plaintiff made a verbal threat against Davis indicating in some way that her safety was at risk.

¶ 8     Rodriguez testified that Association House gathered information about the incident. After the decision was made to terminate plaintiff's employment, Rodriguez spoke with plaintiff, who denied saying "those things" and denied making threats to anyone. Rodriguez agreed that Association House's position was that "when [plaintiff] said 'you infected me or you contaminated me,' that she disclosed some sort of confidence."

¶ 9     Jaime Garcia, Association House's human resources director, testified that plaintiff was discharged both for using profanity toward Davis and for using the word "contaminated" during the incident. He stated that she would have been dismissed for either reason alone. Garcia acknowledged that Davis was still employed at Association House, and explained that another employee had reported plaintiff was the aggressor during the altercation.

¶ 10    Mark Williams, the program manager for the HIV program, testified that when he spoke with plaintiff about the incident, she admitted using the word "contaminated" with regard to "the spittle." However, plaintiff denied using the word "infected" or saying "HIV." When the referee asked whether, by making such a statement, plaintiff actually breached a confidence, Williams answered, "I want to say yes."

¶ 11    Plaintiff testified that the incident with Davis did not "happen out of nowhere," but, rather, things had been building up for about a month beforehand. On the date in question, Davis cut in

line. Plaintiff told her the line was "back here" and that she needed to move. Then, thinking Davis might not have heard her, plaintiff walked to the front of the line to talk to her directly. Plaintiff asked her, "[D]id you not hear me? The line is back there. Can you get to the back of the line?" In response, Davis started yelling that she was not going anywhere. An instructor intervened and made everyone leave the line.

¶ 12     According to plaintiff, she did not follow Davis at that point. Rather, everyone "ended up" upstairs. In the verbal altercation that ensued, plaintiff denied using the word "b***," making threats, or stating that Davis infected or contaminated her. She explained that while she used the word "contaminated," she only meant that Davis's spit, like the spit of any human, was "nasty." She admitted telling Davis to "get your mother f*** a*** out of my face" and saying, "Get up out of my face before I push you out of my face," but asserted that she and Davis traded words "back and forth." Specifically, Davis told plaintiff "to go 'f' or eat a 'd.' " Plaintiff testified that Davis "was up in my face like toe to toe," and that the spitting occurred when Davis "was yelling, she was spitting as she was talking and with the anger just spitting and telling me to do it, do it, hit me, hit me. And every time she said it, she would spit like people when they talk and spit, that's how she was doing it." Plaintiff stated she walked away to de-escalate the situation because Davis was spitting in her face.

¶ 13     Plaintiff further testified that she was dismissed during a meeting with Rodriguez, Garcia, and others. They told her she was being terminated due to a breach of confidentiality and because she had been verbally abusive. Plaintiff denied having received a copy of the employee handbook. She admitted that she signed a piece of paper acknowledging receipt of the handbook, but

explained that she was not aware at the time that she was signing the handbook. She testified she was not aware of the two policies at issue.

¶ 14 On August 21, 2019, the referee issued a decision finding that plaintiff was dismissed from employment for an alleged breach of confidentiality. The referee acknowledged that plaintiff had engaged in a verbal altercation with another employee, but found that "both parties appeared to have similar actions in the event, including being aggressive," and observed that the other employee was still employed. The referee found that plaintiff's use of the word "contaminated" could be taken generally any time a person spits into the face of another person. As such, the referee determined that while plaintiff may have used poor judgment, there was not sufficient evidence to support a finding of willful and deliberate violation of her employer's policies. The referee set aside the decision of the claims adjudicator, concluding that plaintiff was eligible for unemployment benefits.

¶ 15 Association House appealed to the Board.

¶ 16 On December 9, 2019, the Board issued a decision setting aside the referee's decision. In its decision, the Board stated it had reviewed the record, including the transcript of the telephone hearing, and found it adequately set forth the evidence so that no further evidentiary proceedings were necessary.

¶ 17 The Board made the following findings of fact. Association House had policies on verbal and physical abuse, as well as breaching confidentiality. Plaintiff was not "warned" about these issues, but, in 2016, "signed for" a written policy that included a provision forbidding "verbal or physical abuse of a participant or employee." While at a conference on June 25, 2019, plaintiff and a coworker engaged in a protracted verbal altercation, triggered when plaintiff angrily berated the

coworker for cutting in line. Both parties exchanged profanities and vulgarities and security was called to investigate the matter. During the altercation, some of the coworker's "spittle" got on plaintiff and plaintiff complained that the saliva "contaminated" her. After an investigation, Association House discharged plaintiff, believing her to have been the aggressor in the altercation. The Board noted that, during the telephone hearing, plaintiff repeatedly avoided answering the referee's direct questions as to whether she said the vulgar things the coworker had attributed to her. But eventually, plaintiff admitted to telling the coworker to "get your mother f*** a*** out of my face."

¶ 18    The Board held that the preponderance of the evidence did not establish that plaintiff violated any rule of confidentiality. No evidence was evinced to establish that the coworker was HIV positive, that plaintiff knew her HIV status, or that plaintiff revealed any specific medical fact pertaining to her. The Board found credible plaintiff's testimony that she only considered herself contaminated because of the saliva.

¶ 19    Regarding the issue of whether plaintiff violated Association House's rule prohibiting verbal abuse, the Board held as follows:

"[W]e hold that the preponderance of the evidence establishes that she did. The altercation between the claimant and the co-worker was protracted, vigorous, and vulgar, sufficiently so as to attract security. The fact that the co-worker may have been equally vulgar is [*sic*] does not excuse the claimant's actions. We hold that the employer was harmed by the fact that angry altercations in the workplace can lead to violence. The employer has a responsibility to maintain a safe workplace. We hold that the preponderance of the evidence establishes that the claimant 'deliberately' and 'willfully' violated the employer's

policies pertaining to verbal abuse, and she is therefore considered to have been discharged for 'misconduct connected with' the work. She is disqualified from receiving benefits under Section 602A of the Act."

¶ 20 Plaintiff filed a *pro se* complaint for administrative review on January 7, 2020. On May 14, 2021, the circuit court issued an order reversing the Board's decision. The circuit court found that the record supported the Board's determination that plaintiff violated Association House policies during the course of her verbal altercation with Davis. However, the court concluded that, absent a showing that there was some actual impact on employee discipline or operations due to the altercation, there was no support for a finding of "harm" sufficient to satisfy the requirements of Section 602(A).

¶ 21 Defendants filed a motion to reconsider on June 11, 2021, which the circuit court denied on August 24, 2021. Defendants filed a timely notice of appeal on September 22, 2021.

¶ 22 On appeal, defendants contend that the Board's determination that plaintiff was ineligible for benefits under section 602(A) of the Act was not clearly erroneous. We agree.

¶ 23 The Act provides economic relief to individuals who become involuntarily unemployed. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 396 (2001). A person may receive unemployment benefits under the Act if she meets the eligibility requirements and is not subject to any disqualifications or exemptions. *Matlock v. Illinois Department of Employment Security*, 2019 IL App (1st) 180645, ¶ 22. On administrative review of an unemployment eligibility decision by IDES, we review the decision of the Board, not that of the circuit court, the referee, or the claims adjudicator. *Cannici v. Department of Employment*

*Security Board of Review*, 2021 IL App (1st) 181562, ¶ 27. The standard of review depends on the issue presented. *Id.*

¶ 24    Under Section 602(A) of the Act, a person is ineligible for benefits if she was discharged for misconduct connected with her work. 820 ILCS 405/602(A) (West 2018). To establish misconduct under the Act, it must be proven that: (1) the employer had a reasonable work rule; (2) the employee deliberately and willfully violated the rule; and (3) the violation either was repeated by the employee despite a prior warning or harmed the employer. *Id.*; *Cannici*, 2021 IL App (1st) 181562, ¶ 41.

¶ 25    In an appeal involving a claim for unemployment benefits, we defer to the Board's factual findings unless they are against the manifest weight of the evidence. *Manning v. Department of Employment Security*, 365 Ill. App. 3d 553, 556 (2006). An administrative agency's findings of fact are against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). In our role as a reviewing court, we may not judge the credibility of the witnesses, resolve conflicts in testimony, or reweigh the evidence. *White v. Department of Employment Security*, 376 Ill. App. 3d 668, 671 (2007). We review legal determinations by an administrative agency *de novo*. *Persaud v. Illinois Department of Employment Security*, 2019 IL App (1st) 180964, ¶ 15.

¶ 26    The ultimate question of whether an individual was terminated for misconduct in connection with her work is a question that involves a mixed question of law and fact to which we apply the clearly erroneous standard of review. *Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 21; *Cannici*, 2021 IL App (1st) 181562, ¶ 43. An agency's decision is

considered to be clearly erroneous where the entire record leaves the reviewing court with the definite and firm conviction that a mistake has been made. *Petrovic*, 2016 IL 118562, ¶ 21.

¶ 27    In the instant case, the record supports the Board's determination that plaintiff's actions constituted misconduct under section 602(A) of the Act.

¶ 28    First, we consider whether Association House's written policy prohibiting verbal abuse of other employees was reasonable. A rule or policy is reasonable when it appropriately relates to the workplace and concerns standards of behavior which an employer has a right to expect from its employees. *Sudzus v. Department of Employment Security*, 393 Ill. App. 3d 814, 827 (2009). Reviewing courts consider many factors when assessing whether a rule is reasonable under section 602(A), including its relationship to workplace efficiency, safety, or discipline; its precision or clarity; and the extent to which it infringes upon legally protected behavior. *Caterpillar, Inc. v. Fehrenbacher*, 286 Ill. App. 3d 614, 621-22 (1997).

¶ 29    Defendants argue that Association House's policy was reasonable because an employer has a right to expect its employees to refrain from verbally abusing other employees. We agree. The rule at issue here was clearly and precisely set forth in the employee handbook and related directly to workplace discipline. Because the right of free speech is not implicated in cases involving discharge from private-sector employment (see *Rozier v. St. Mary's Hospital*, 88 Ill. App. 3d 994, 1000 (1980)), the rule did not infringe on plaintiff's legally protected behavior. Moreover, this court has held that the use of hostile, intimidating, or vulgar language " 'intentionally and substantially disregards an employer's interests.' " *Manning*, 365 Ill. App. 3d at 558 (quoting *Greenlaw v. Department of Employment Security*, 299 Ill. App. 3d 446, 448-49 (1998) (abrogated on other grounds by *Petrovic*, 2016 IL 118562, ¶¶ 35-36)). Accordingly, we

find that Association House's written policy prohibiting verbal abuse of other employees was a reasonable rule within section 602(A) of the Act.

¶ 30    Second, Association House presented evidence that plaintiff was aware of and deliberately and willfully violated the workplace policy against verbal abuse. "Willful misconduct occurs where an employee is aware of a company rule and consciously disregards it." *Ken's Beverage, Inc. v. Wood*, 2021 IL App (3d) 190115, ¶ 14.

¶ 31    With regard to plaintiff's awareness of the policy against verbally abusing coworkers, the Board noted in its decision that plaintiff signed a form acknowledging receipt of Association House's employee handbook, which included a provision stating that verbal abuse of other employees could lead to termination. In addition, in her application for unemployment benefits, plaintiff stated that her employer had a rule of "no verbal altercation or threats to other coworkers" and acknowledged that she was aware she could be discharged for not complying with that rule.

¶ 32    We are mindful that at the telephone hearing, plaintiff denied having received a copy of the employee handbook and testified that she was unaware of the policy against verbal abuse. However, given its decision, the Board apparently rejected plaintiff's testimony on this point as incredible. As explained above, on administrative review, we may not judge the credibility of the witnesses. *White*, 376 Ill. App. 3d at 671.

¶ 33    As for the determination that plaintiff committed a deliberate violation of the workplace policy against verbal abuse, plaintiff admitted at the telephone hearing that she told Davis to "get your mother f*** a*** out of my face" and "[g]et up out of my face before I push you out of my face." These statements were not inadvertent or negligent. Rather, as the Board observed, they were uttered in the course of a protracted, vigorous, verbal altercation that was triggered when

plaintiff "berated" Davis for cutting in line. Based on the evidence in the record before us, we cannot conclude that the Board made a mistake when it determined that plaintiff deliberately and willfully violated Association House's policy against verbal abuse of other employees. See *AFM Messenger Service*, 198 Ill. 2d at 393.

¶ 34    Third, harm to the employer is not limited to actual harm, but can be established by potential harm. *Cannici*, 2021 IL App (1st) 181562, ¶ 54. For example, the act of leaving vulgar voicemail messages for a fellow employee is potentially harmful to an employer because the use of hostile and intimidating language to a coworker could adversely affect the work environment. *Manning*, 365 Ill. App. 3d at 558. In this case, plaintiff's behavior of verbally abusing Davis, which occurred in a public area where other employees could see and hear it, could adversely affect the work environment in that it could affect employee morale and cooperation. See *Alternative Staffing, Inc. v. Illinois Department of Employment Security*, 2012 IL App (1st) 113332, ¶ 31 ("Harm includes damage or injury to other employees' well-being or morale or to the employer's operations or goodwill."); see also *Ken's Beverage, Inc.*, 2021 IL App (3d) 190115, ¶ 14 (misconduct can be premised on a single incident). Thus, the element of harm was established.

¶ 35    After reviewing the record, we cannot say that the Board's determination that plaintiff was discharged for misconduct connected with work was against the manifest weight of the evidence or clearly erroneous. Accordingly, we reverse the judgment of the circuit court and affirm the decision of the Board finding plaintiff ineligible to receive unemployment benefits.

¶ 36    Reversed; Board decision affirmed.