(No. 60515.—

WALTER BRAUN, Appellant, v. THE RETIREMENT BOARD OF THE FIREMEN'S ANNUITY & BENE-FIT FUND OF CHICAGO *et al.*, Appellees.

*Opinion filed July 17, 1985.—Rehearing denied September 27, 1985.*

Peter T. Shovlain, of Collins, Jutila & Shovlain, Chtd., of Waukegan, and John M. O'Malley, of Winston & Strawn, of Chicago, for appellant.

James J. Ahern, of Connelly & Ahern, of Chicago (Peter C. Rolewicz, of counsel), for appellee Retirement Board of the Firemen's Annuity & Benefit Fund of Chicago.

J. Peter Dowd, of Jacobs, Burns, Sugarman & Orlove, of Chicago, for intervenors-appellees Chicago Fire Fighters Union *et al.*.

James C. Montgomery, Corporation Counsel, of Chicago (Jerome A. Siegan and Lynn K. Mitchell, of counsel), for *amicus curiae* City of Chicago.

JUSTICE MILLER delivered the opinion of the court:

Walter Braun, deputy fire commissioner of the city of Chicago, brought this action to determine the appropriate salary on which to base the computation of his pension contributions and benefits in the Firemen's Annuity and Benefit Fund of Chicago. Until 1972, Braun served in the Chicago fire department in ranks classified under civil service; since then, he has held a number of higher paying, unclassified positions. Rather than base the computation of Braun's pension contributions and benefits on the higher salaries attached to those positions, how-

ever, the retirement board of the fund has chosen a lower basis instead and has continued to use the salary corresponding to the highest civil service rank attained by Braun.

The retirement board denied Braun's request to have his pension contributions and benefits computed on the basis of the actual salary that he earned in those unclassified positions. That decision, made April 21, 1982, was unanimous; one member of the board was absent, and Braun, the eighth member, did not cast a vote on the matter. Braun then filed a complaint for administrative review, and he later amended that complaint by adding a second count, which sought relief for a class of similarly situated participants in the fund. The circuit court ruled in Braun's favor, holding that Braun's pension contributions and benefits were to be computed on the basis of the actual salary that he earned in the various unclassified positions. Both the retirement board and the intervenors, comprising the Chicago Firefighters Union and the four elected trustees of the fund, appealed the circuit court's decision. The appellate court reversed the circuit court and reinstated the decision of the retirement board. (125 Ill. App. 3d 132.) We allowed Braun's petition for leave to appeal (94 Ill. 2d R. 315(a)) and now affirm the appellate court's judgment.

Braun began his career with the Chicago fire department in May 1948. He worked continuously in ranks classified under civil service until January 1, 1972, when he was promoted to a higher ranking, unclassified position, chief of personnel, plans, and training. Since that time, he has served only in unclassified positions. As the basis for computing Braun's pension contributions and benefits, the retirement board has used the highest civil service rank that Braun attained, division fire marshal, later known as deputy district chief, rather than the various unclassified positions. That has been consistent with

the board's practice since the early 1960's. From the record before us, it appears that beginning in 1976 the term "exempt" has been the formal designation for positions like the ones that Braun has occupied since 1972. The city's new personnel code, which took effect in 1976, replaced the term "civil service" with the term "career service." Also, it made all positions in the fire department above battalion chief exempt, or outside career service. Firefighters who held any of the four civil service ranks above battalion chief continued in those ranks, and their pension contributions and benefits were continued to be computed on that basis. For a person of Braun's age and years of service, the minimum annuity to which he will be entitled upon retirement will be half the average salary for the four highest consecutive years of his last 10 years of service. See Ill. Rev. Stat. 1983, ch. 108½, par. 6—128.

The dispute here centers on three provisions found in the Illinois Pension Code (Ill. Rev. Stat. 1983, ch. 108½, pars. 1—101 through 24—108). Article 6 of the Code (Ill. Rev. Stat. 1983, ch. 108½, pars. 6—101 through 6—225) establishes and governs the Firemen's Annuity and Benefit Fund of Chicago, the pension system for eligible members of the Chicago fire department. Section 6—111 defines "salary" and, at the time of the circuit court's decision here, provided in pertinent part:

"Salary. 'Salary': Annual salary of a fireman, as follows:

(a) For age and service annuity, minimum annuity and disability benefits, the actual amount of the annual salary ***." (Ill. Rev. Stat. 1981, ch. 108½, par. 6—111.)

Section 6—163 of the Code provided:

"For age and service annuity, the minimum annuities prescribed in Sections 6—123 and 6—128 and for disability benefits, salary as defined in Section 6—111 shall be the

basis of computation. For disability pension and duty disability benefit under this Article, it shall be assumed that the annual salary of a fireman is the amount set out and appropriated for the rank or grade held by him in the annual budget or appropriation of the city ***." (Ill. Rev. Stat. 1981, ch. 108½, par. 6—163.)

Finally, at the time of the circuit court's decision, section 6—211 provided:

"When annuity or benefit not payable. No annuity, pension or other benefit shall be paid to a fireman or widow, under this Article, based upon any salary paid by virtue of a temporary appointment. All contributions, annuities and benefits shall be related to the salary which attaches to the permanent position of fireman. Any fireman temporarily serving in a position or rank other than that to which he has received permanent appointment shall be considered, while so serving, as though he were in his permanent position or rank, except that no increase in any pension, annuity or other benefit hereunder shall accrue to him by virtue of any service performed by him subsequent to attaining the compulsory retirement age provided by law or ordinance. This section shall not apply to any person certified to the fire department by the civil service commission of the city, during the period of probationary service." Ill. Rev. Stat. 1981, ch. 108½, par. 6—211.

Significantly, sections 6—211 and 6—111 were amended after the circuit judge rendered his decision here and while the case was pending in the appellate court. Public Act 83—16, effective July 7, 1983, added a paragraph to section 6—211; it provided:

"A fireman who holds a position at the will of the Fire Commissioner or other appointing authority, whether or not such position is an 'exempt' position, shall be deemed to hold a temporary position, and such employee's contributions and benefits shall be based upon the employee's permanent career service salary. The provisions of this paragraph shall be retroactive to January 1, 1976." (Ill. Rev. Stat. 1983, ch. 108½, par. 6—211.)

Also, the amendment added both a descriptive title, "Permanent and temporary positions," and a phrase to the definition of "salary," so that it read, "Subject to Section 6—211, the annual salary of a fireman, as follows: ***" (Ill. Rev. Stat. 1983, ch. 108½, par. 6—111).

Apart from the language added by the 1983 amendment, the Illinois Pension Code does not define the terms "permanent" and "temporary." The retirement board and the intervenors argue, in essence, that section 6—211 serves as a limitation on sections 6—111 and 6—163. They believe that the distinction drawn in section 6—211 between permanent and temporary appointments corresponds generally to the distinction between classified and unclassified positions. Thus, an appointment under civil or career service would be permanent, and an unclassified or exempt position would be temporary, regardless of how long the position is held. From that interpretation the retirement board and the intervenors conclude that Braun has held only temporary appointments in the department since 1972 and therefore his pension contributions and benefits have been properly computed on the basis of the highest permanent, or civil service, rank that he attained. Moreover, the board and the intervenors believe that the changes effected by the 1983 amendment merely clarified this meaning.

Braun argues that the distinction in section 6—211 between permanent and temporary rests instead on the duration that the position is held. Braun would limit temporary appointments to those that are held for only a short period of time. Because all his unclassified appointments since 1972 have been of longer duration, Braun believes that they qualify as permanent appointments and therefore must supply the basis for computing his pension contributions and benefits. Accordingly, Braun believes that the 1983 amendment changed rather than clarified the statutory provisions. Moreover, he argues

that retroactive operation of the amendment violates the guarantee in the Illinois Constitution against the diminution or impairment of pension benefits. See Ill. Const. 1970, art. XIII, sec. 5.

In support of his interpretation of section 6—211, Braun relies on the appellate court's decision in *Quinn v. Retirement Board of the Firemen's Annuity & Benefit Fund* (1972), 7 Ill. App. 3d 791, which addressed a similar dispute. There, Commissioner Quinn sought to have his pension contributions and benefits computed on the basis of his actual salary as fire commissioner rather than on the salary corresponding to his highest civil service rank, division fire marshal. Commissioner Quinn based his argument on an amendment that was made in 1967 to section 6—163. The court summarized the amendment as follows:

"As amended, the first sentence of Section 6—163 provides that salary as defined in Section 6—111 of the Pension Code shall be the basis of computation for annuities and pensions. Section 6—111 defines salary of a fireman as the actual amount of the annual salary. Prior to the amendment, Section 6—163 provided that, in determining annuities and pensions, annual salary of a fireman was the amount set out and appropriated for the rank or grade held by him in the annual budget. In our opinion, the legislature clearly intended that after the 1967 amendment to Section 6—163 the minimum annuity or pension of a participant in the fund would be predicated upon the actual amount of annual salary appropriated in the annual budget for the particular position occupied by the participant. Consequently plaintiff would be entitled to have his pension rights based upon his annual salary as Fire Commissioner rather than on the salary of his highest attained civil service rank, Division Fire Marshal." (7 Ill. App. 3d 791, 796-97.)

The court went on to reject the argument that under its construction section 6—163 would conflict with section

6—211 and the distinction drawn there between permanent and temporary appointments. Because the term "temporary appointment" was not defined in the Illinois Pension Code, the court looked to several other uses of the term to explain its meaning. These indicated an intentionally limited period of time. The court said, "Within the meaning of Section 6—211, plaintiff was not appointed on a temporary basis, but received a permanent appointment as Commissioner." (7 Ill. App. 3d 791, 799.) *Quinn* noted, too, that if the provisions did conflict, section 6—163, containing the more recent expression by the legislature, would control.

The retirement board and intervenors do not disagree with the particular holding in *Quinn* but would limit its effect to the position of fire commissioner, which they believe is distinguishable from any position that Braun has occupied since 1972, when he was promoted above the civil service ranks.

We believe that the 1983 amendment should be considered in determining the meaning of the terms "permanent" and "temporary" as they are used in section 6—211. (See *People v. Rink* (1983), 97 Ill. 2d 533; *Commonwealth Edison Co. v. Department of Local Government Affairs* (1981), 85 Ill. 2d 495; *O'Connor v. A & P Enterprises* (1980), 81 Ill. 2d 260.) Before the amendment, the terms were ambiguous; they were not defined in the Illinois Pension Code, and they did not correspond to any fixed vocabulary appearing in the city's own personnel code. Although the amendment did not itself say that it was intended to clarify rather than modify, the changes made were by way of clarification. That the legislature acted promptly, while the dispute was pending on appeal from the circuit court's decision, also is evidence that a clarification rather than a modification was intended. (*Gill v. Miller* (1983), 94 Ill. 2d 52.) Moreover, making the amendment applicable retroactively to Jan-

uary 1, 1976, appears to be an attempt to conform the changes to the new terminology adopted at that time in a new municipal personnel code.

One additional reason supports our conclusion that the 1983 amendment clarifies rather than modifies the affected provisions. To construe the statutes as Braun suggests would cast doubt on the constitutionality of the 1983 amendment, a result that the legislature could not have intended. Under Braun's interpretation, the 1983 amendment did indeed change the meanings of the terms "permanent" and "temporary," and therefore the purported retroactivity of the amendment could be construed as impairing or diminishing his pension rights. That would be in violation of article XIII, section 5, of the Illinois Constitution, which provides, "Membership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." (Ill. Const. 1970, art. XIII, sec. 5.) We must assume that the legislature intended "to enact a constitutional statute" (*Gill v. Miller* (1983), 94 Ill. 2d 52, 57). Accordingly, an interpretation under which the statute would be considered constitutional is preferable to one that would leave its constitutionality in doubt. (*People v. Davis* (1982), 93 Ill. 2d 155; *In re Marriage of Eltrevoog* (1982), 92 Ill. 2d 66; *Morton Grove Park District v. American National Bank & Trust Co.* (1980), 78 Ill. 2d 353.) Here, reading the 1983 amendment as a clarification of the existing provisions rather than as a modification of them would avoid the possible constitutional infirmity, and that is the reading that we adopt.

Therefore, we necessarily conclude that the positions that Braun occupied beginning in 1972 were indeed temporary and, by the terms of section 6—211, could not constitute the basis for computing his pension contribu-

tions and benefits.

Braun also questions the standing of the retirement board to appeal the circuit court's adverse judgment, under the normal rule that an administrative agency has no standing to appeal a decision reversing its own decision. (See *Speck v. Zoning Board of Appeals* (1982), 89 Ill. 2d 482.) The retirement board has extensive managerial responsibilities, however, and it is more than a tribunal. Those responsibilities were illustrated in this court's recent decision in *Kozak v. Retirement Board of the Firemen's Annuity and Benefit Fund* (1983), 95 Ill. 2d 211, although the question of standing was not raised there. That the retirement board appears here through counsel other than the corporation counsel is explained by the latter's decision to support Braun in opposition to the board's decision. With respect to the standing of the intervenors, Braun initially objected to their intervention, but later withdrew those objections.

Finally, the circuit court's order here purported to grant the class relief sought in the second count of Braun's amended complaint. The order described itself, too, as final and appealable. Earlier, the court had severed the class count and had determined that it would be held in abeyance pending a decision on Braun's request for individual relief; no class was ever certified. Given our result here, the class count must also fail.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*