# Illinois Official Reports

## Appellate Court

---

### *Farris v. Department of Employment Security*, 2014 IL App (4th) 130391

---

| | |
|---|---|
| Appellate Court Caption | DONALD FARRIS, Plaintiff-Appellee, v. THE DEPARTMENT OF EMPLOYMENT SECURITY, an Administrative Agency in the State of Illinois; THE DIRECTOR OF EMPLOYMENT SECURITY; and THE BOARD OF REVIEW, an Administrative Agency of the State of Illinois, Defendants-Appellants, and STROUT CROSSING, LLC, Defendant. |
| District & No. | Fourth District<br>Docket No. 4-13-0391 |
| Filed | March 11, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court had jurisdiction to consider the Department of Employment Security's appeal from the trial court's reversal of the Board of Review's decision that plaintiff was not entitled to unemployment benefits because he was discharged for employment-related misconduct based on his violation of a biosecurity policy at the pig-breeding facility where he worked, even though plaintiff's employer did not participate in the trial court proceedings, since the Department is responsible for defending the Board's decisions and protecting against erroneous payouts from the unemployment fund, and in plaintiff's case, the fact that plaintiff's employer was not harmed by plaintiff's violation of the biosecurity policy was due to the fortuitous intervention of a supervisor who refused to allow plaintiff to return to a "clean" area of the facility with contaminated clothing and did not prevent the violation from being deemed misconduct under section 602(A) of the Unemployment Insurance Act. |
| Decision Under Review | Appeal from the Circuit Court of Greene County, No. 11-MR-40; the Hon. James W. Day, Judge, presiding. |

| | |
|---|---|
| Judgment | Circuit court reversed; Board confirmed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and John P. Schmidt, Assistant Attorney General, of counsel), for appellants. |
| | Richard N. Gillingham, of Carrollton, for appellee. |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion. Justices Knecht and Turner concurred in the judgment and opinion. |

**OPINION**

¶ 1      In January 2011, plaintiff, Donald Farris, was fired from his employment at a pig-breeding facility owned by Strout Crossing, LLC (Strout), and operated by Pike Pig Systems, Inc. (Pike), for violating a biosecurity policy designed to avoid bacterial contaminants from entering the breeding facility and infecting the pigs. Plaintiff applied to the Department of Employment Security (Department) for unemployment benefits. Strout objected on the ground that plaintiff was discharged due to employment-related misconduct, rendering him ineligible for unemployment benefits under section 602(A) of the Unemployment Insurance Act (820 ILCS 405/602(A) (West 2012)). A claims adjudicator agreed with Strout. Plaintiff appealed the claims adjudicator's decision to a Department referee who, following a hearing, determined that plaintiff was eligible for unemployment benefits because his actions did not constitute misconduct within the meaning of section 602(A) of the Act. Strout appealed the referee's decision to the Board of Review (Board), which reversed the referee's decision and found plaintiff ineligible for unemployment benefits. Plaintiff then filed a complaint for administrative review in the circuit court, arguing that he was not guilty of employment-related misconduct because his violation of the biosecurity policy did not result in harm to Strout. The circuit court agreed and reversed the Board's decision.

¶ 2      The Department, its Director, and the Board appeal from the circuit court's decision, arguing that plaintiff's actions constituted misconduct within the meaning of section 602(A) of the Act, even though those actions did not result in actual harm. We agree and reverse.

¶ 3                          I. BACKGROUND

¶ 4      The following facts were gleaned from the record of administrative proceedings before the Department's local-office claims adjudicator, the Department referee, and the Board, as well as the circuit court record. From December 2005 until January 2011, plaintiff worked as a

farmhand in the breeding barn of Strout's pork production facility. After his discharge in January 2011, plaintiff applied to the Department for unemployment benefits.

¶ 5    A. Proceedings Before the Claims Adjudicator

¶ 6    Strout filed an objection to plaintiff's claim with the claims adjudicator of the Department's local office on the ground that plaintiff was ineligible for unemployment benefits under section 602(A) of the Act because he was discharged due to employment-related misconduct.

¶ 7    Strout submitted a written statement of its biosecurity procedures, as contained in the employee handbook, to the claims adjudicator. The handbook described biosecurity as "of the upmost [*sic*] importance" to the company. The biosecurity policy designated the area of the farm facility where the pigs were located as the "clean" area, and the other parts of the facility as the "dirty" area. When employees who worked in the clean area arrived at work, they were required to remove their clothing in the dirty area, take a shower, walk through the shower area into the clean area, and put on clean clothes supplied by the farm. When leaving the clean area, workers were required to remove their farm clothes, leave them behind in the clean area and "shower through" to the dirty area, where they could put on their own clothes and leave at the end of their shifts. According to the employee handbook, these showering procedures were "the core of the personal biosecurity program" and necessary to prevent the spread of diseases, which can be easily carried on shoes, clothing, fingernails, hair, and jewelry.

¶ 8    According to Strout's written statement regarding the circumstances of plaintiff's termination on January 15, 2011, plaintiff's supervisor, David Bishop of Pike, received a phone call from a Pike supervisor asserting that he could not locate plaintiff and suggesting that he might be sleeping in a bathroom in the dirty area of the facility. Bishop went to the farm facility and heard what he perceived to be snoring coming from a bathroom in the dirty area. Bishop knocked several times, and eventually heard a voice from inside say, "I'm taking a crap." The toilet then flushed and plaintiff exited the bathroom while still wearing his farm clothes, which had been soiled with pig manure from activity inside the clean area. Bishop then fired plaintiff for violating the farm's biosecurity procedures.

¶ 9    In a misconduct questionnaire submitted to the claims adjudicator, plaintiff claimed that he did not know about the biosecurity procedures that he violated. He further claimed that he would have showered before returning to the clean area, but Bishop fired him before he had a chance to do so.

¶ 10    The claims adjudicator determined that plaintiff was ineligible for unemployment benefits under section 602(A) of the Act because he was discharged for misconduct connected with his job. The claims adjudicator reasoned that plaintiff violated one of Strout's known and reasonable company rules.

¶ 11    B. Proceedings Before the Referee

¶ 12    Plaintiff appealed the claims adjudicator's decision to a Department referee. In March 2011, the referee held a hearing over the telephone, in which plaintiff and Bishop participated remotely via conference call. Bishop testified that plaintiff had been trained in the biosecurity procedures, which were written in an employee handbook. The handbook stated that a gross or intentional violation of the biosecurity procedures was grounds for immediate termination.

¶ 13 According to Bishop, plaintiff was scheduled to work from 6 a.m. to 2:30 p.m. on January 15, 2011. Before Bishop arrived at the farm facility that morning, he received a phone call from a supervisor who told him that he could not find plaintiff. After his arrival at approximately 7:40 a.m., Bishop heard noise coming from a bathroom. That bathroom was in the dirty area of the farm, and it was often used by employees who did not work in the clean area. The clean area contained two bathrooms. After Bishop knocked on the bathroom door, plaintiff eventually emerged dressed in farm clothing containing pig-manure stains. Plaintiff told Bishop that he had to use the bathroom. When Bishop asked plaintiff if he knew about the biosecurity procedures, plaintiff said "yes" but stated that other people needed to be fired for biosecurity violations as well. Bishop instructed plaintiff to remove his farm clothing and leave it behind. Bishop testified that plaintiff's violation of the biosecurity procedures did not cause any harm because Bishop discovered plaintiff before he could reenter the clean area. Bishop asserted that had plaintiff reentered the clean area, such an event could have cost the company over $40,000 in extra pig vaccines.

¶ 14 Plaintiff testified that he used the bathroom in the dirty area because one of the bathrooms in the clean area was occupied and the other one was unsanitary. Plaintiff admitted that he wore his farm clothes into the dirty area and that Bishop told him he was being discharged for violating biosecurity procedures. Plaintiff asserted that he had never received any warnings regarding the biosecurity procedures, nor did he remember signing a paper containing those procedures when he began his employment.

¶ 15 During the hearing, Bishop asked plaintiff how he intended to get the soiled farm clothes he was wearing–which were supposed to always remain in the clean area–back into the clean area where the washing machines were located. Plaintiff replied that he could have taken the soiled clothes off, had another employee come from the clean area to retrieve them, and then shower through to the clean area. Plaintiff seemed to assert that no biosecurity breach would occur as long as the soiled clothes did not touch the ground. Bishop then asked plaintiff whether the employee who came to retrieve the soiled clothes would have been guilty of a biosecurity breach, to which plaintiff replied, "No, no, because people bring in their lunch boxes every day past that and set them on the inside [of the clean area], that's a breach of biosecurity, every day, everybody who does that. So it wouldn't make no difference if I did that because anybody brings their lunch in is doing that."

¶ 16 Several days after the hearing, the referee issued a decision in which he concluded, as follows:

> "Here, [plaintiff] normally had used the outside restrooms after being inside the barrier and without showering first to do so. He received no warnings for doing so. He received no clear direction regarding the bio-hazard policy as it related to showering other than he knew he was to shower upon coming to work. On these facts the employer condoned [plaintiff's] behavior regarding the bio-hazard policy.
>
> *** Even had the employer not condoned [plaintiff's] behavior, his absence of a clear understanding of what the employer expected in regard to the bio-hazard policy rendered his behavior on January 15, 2011, to be if anything [an] inadvertent and negligent violation of the bio-hazard procedure rather than deliberate and willful. There was no misconduct within the meaning of [s]ection 602A of the [Act]."

The referee set aside the claim adjudicator's determination and found plaintiff eligible for unemployment benefits.

## C. The Board's Decision

Strout appealed the referee's decision to the Board. In May 2011, after reviewing the record of the hearing before the referee, the Board released a decision stating it found plaintiff's claim that he had never been informed of the biosecurity procedures incredible. The Board concluded that plaintiff was not entitled to unemployment benefits because his actions were "deliberate and willful," rising to an "intentional violation of the employer's rules," and constituting misconduct within the meaning of section 602(A) of the Act.

## D. The Circuit Court's Decision on Administrative Review

Later in May 2011, in an apparent attempt to initiate administrative review of the Board's decision, plaintiff filed with the circuit court copies of the referee's decision, the Board's decision, and an application to sue *in forma pauperis*. The court, noting in a docket entry that "[t]his type of proceeding is far too complicated for [plaintiff] to try to do *** on his own," appointed an attorney to represent plaintiff *pro bono*. Through his attorney, plaintiff filed a formal complaint for administrative review, naming the Department, its Director, the Board, and Strout as defendants. The Attorney General entered its appearance on behalf of the Department, its Director, and the Board. Strout did not enter an appearance or otherwise participate at the circuit court level.

In a brief to the circuit court, plaintiff admitted that he violated the biosecurity procedures by leaving the clean area and going into the dirty area without removing his farm clothes or showering. Plaintiff further asserted that because he was stopped before reentering the clean area, he was not guilty of employment-related misconduct, since Strout suffered no harm from his violation of the biosecurity procedures. In a response brief, the Attorney General argued that plaintiff's rule violation constituted misconduct within the meaning of section 602(A) of the Act because it posed a risk of substantial harm to Strout.

After considering the administrative record and the parties' briefs, the circuit court reversed the Board's decision on the grounds that Strout had not suffered harm from plaintiff's violation of the biosecurity procedures. The court stated, "There being no finding of harm by the [B]oard and no harm alleged (in fact denied) by the employer then, as they say in basketball–no harm, no foul. The decision of the Board of Review is reversed."

This appeal followed.

## II. ANALYSIS

On appeal, the Department, its Director, and the Board argue that plaintiff's actions constituted misconduct within the meaning of section 602(A) of the Act, even though those actions did not result in actual harm.

## A. Jurisdiction

We first address plaintiff's contention that we lack jurisdiction over this appeal. Plaintiff argues that when the adverse party (the employer) fails to participate at the circuit court level, an agency which did participate at that level (the Board, the Department, or the Director) lacks standing to appeal from the circuit court's reversal of the agency's decision. Plaintiff asserts that the Board lacks standing because its role is merely that of an impartial tribunal for claims between an employee and the employer, and the Department and its Director lack standing because they are merely trustees of the unemployment insurance fund.

¶ 28 However, in *Braun v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 108 Ill. 2d 119, 128, 483 N.E.2d 8, 12 (1985), the supreme court rejected the argument that the retirement board lacked standing to appeal the circuit court's reversal of its own decision. The court explained that "[t]he retirement board has extensive managerial responsibilities, however, and it is more than a tribunal." *Id*. Pursuant to *Braun*, we conclude that the state parties have standing to appeal the circuit court's adverse decision.

¶ 29 As the guardians of the unemployment insurance fund, the Department and its Director have a duty to protect the fund from diminution in the form of disbursements to ineligible claimants. Private employers cannot be relied upon to serve as the fund's sole defense against unqualified claims. As the facts of this case illustrate, a claimant seeking unemployment benefits can obtain administrative review in the circuit court at virtually no cost. Here, the circuit court (for whatever reason) even appointed counsel to represent plaintiff *pro bono*. The corporate employer, on the other hand, *must* retain private counsel if it wishes to participate at the circuit court level. See, *e.g.*, *Downtown Disposal Services, Inc. v. City of Chicago*, 407 Ill. App. 3d 822, 832, 943 N.E.2d 185, 194 (2011) ("[C]orporations must appear in court through a licensed attorney, rather than a layperson."). In the face of an erroneous claim by an ineligible claimant, the cost to an employer of paying out the claim will almost always be less than the cost of hiring legal counsel to defend against the claim at the circuit court level–much less the appellate court level.

¶ 30 Section 1100 of the Act provides as follows: "The Director shall be deemed to have been a party to any administrative proceeding before the Board of Review and shall be represented by the Attorney General in *any judicial action* involving any such decision." (Emphasis added.) 820 ILCS 405/1100 (West 2012). The Department and its Director administer the fund that plaintiff seeks to draw from. The legislature has entrusted the Department and its Director with the responsibility of administering the Act, as follows:

> "It shall be the duty of the Director to administer this Act. To effect such administration, there is created the Department of Employment Security, under the supervision and direction of a Director of Employment Security. The Department of Employment Security shall administer programs for unemployment compensation and a State employment service. The Director shall determine all questions of general policy, promulgate rules and regulations and be responsible for the administration of this Act." 820 ILCS 405/1700 (West 2012).

¶ 31 The legislature has also entrusted the Department and its Director with protecting the fund and handling its assets in accordance with the Act. See 820 ILCS 405/2100(A) (West 2012). If "extensive managerial responsibilities" are ever sufficient to confer standing upon an administrative agency to prosecute an appeal, as the supreme court held in *Braun* (*Braun*, 108 Ill. 2d at 128, 483 N.E.2d at 12), then that criterion surely applies in this case. Given the above-cited provisions of the Act, the practical need for an advocate to defend the decisions of the Board in the circuit court and guard against erroneous payouts from the unemployment fund, and the extensive managerial responsibilities of the Department and its Director, we conclude that the legislature intended to confer standing upon the Department, its Director, and the Board to prosecute appeals from adverse circuit court decisions. See *Stone v. Department of Employment Security Board of Review*, 151 Ill. 2d 257, 260, 602 N.E.2d 808, 809 (1992) (allowing the Board's petition for leave to appeal from an adverse appellate court decision where the employer was not named as a party). Accordingly, we have jurisdiction over this appeal.

¶ 32                    B. Plaintiff's Claim for Unemployment Benefits

¶ 33        The Department, its Director, and the Board argue that the circuit court erred by determining that plaintiff's actions did not constitute misconduct within the meaning of section 602(A) of the Act because they did not result in harm to Strout. We agree.

¶ 34                            1. *Standard of Review*

¶ 35        "On appeal from the circuit court, we review the findings of the Board, not the referee or circuit court." *Walls v. Department of Employment Security*, 2013 IL App (5th) 130069, ¶ 14, 993 N.E.2d 1129. Because the Board's decision that plaintiff was not eligible for unemployment benefits due to his misconduct constitutes a mixed question of law and fact, we will reverse the Board's decision only if it was clearly erroneous. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 391, 763 N.E.2d 272, 279 (2001). Under this standard, we will reverse the Board's decision only if, based on the entire record, we are left with the definite and firm conviction that a mistake has been committed. *Id*. at 395, 763 N.E.2d at 282.

¶ 36                            2. *Section 602(A) of the Act*

¶ 37        Section 602(A) of the Act provides that employees discharged for misconduct shall not be eligible to receive unemployment benefits. *Alternative Staffing, Inc. v. Illinois Department of Employment Security*, 2012 IL App (1st) 113332, ¶ 30, 983 N.E.2d 1036; 820 ILCS 405/602(A) (West 2012). That section defines "misconduct" as follows:

> "[T]he deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit." 820 ILCS 405/602(A) (West 2012).

¶ 38        "In determining whether an employer was harmed, the employee's conduct should be viewed in the context of potential harm, and not in the context of actual harm." *Manning v. Department of Employment Security*, 365 Ill. App. 3d 553, 557, 850 N.E.2d 244, 248 (2006) (citing *Greenlaw v. Department of Employment Security*, 299 Ill. App. 3d 446, 448, 701 N.E.2d 175, 177 (1998)). Plaintiff concedes that he violated Strout's biosecurity procedures. Additionally, plaintiff's statements at the hearing before the referee clearly showed that he was aware he was violating the biosecurity procedure at the time he wore his farm clothes to the bathroom in the dirty area of the farm facility. Instead of arguing that his conduct did not constitute a violation of the biosecurity procedures, plaintiff argued that others committed violations of the biosecurity procedures as well. The Board appropriately rejected plaintiff's claims that he was ignorant of the biosecurity procedures. Further, plaintiff has not claimed at any point in these proceedings that Strout's biosecurity procedures were unreasonable. Accordingly, the only questions before us are whether plaintiff's deliberate and willful violation of Strout's reasonable biosecurity rules (1) resulted in harm to Strout or (2) had the potential to harm Strout. Our concluding affirmatively to either question would suffice under *Manning* to affirm the Board's decision.

¶ 39        Plaintiff argues that his conduct did not have the potential to harm Strout because he never reentered the clean area. However, this is an argument against *actual* harm. Plaintiff's decision

to use the bathroom in the dirty area, without following the mandatory biosecurity procedures, had the potential to harm Strout because, had Bishop not stopped him, plaintiff would have reentered the clean area without showering through. It was merely fortuitous that Bishop located plaintiff before he reentered the clean area. Bishop was not required to let plaintiff reenter the clean area in his farm clothes, potentially exposing the pigs to bacterial contaminants, before firing him for misconduct.

¶ 40    Plaintiff's interpretation of section 602(A) of the Act would lead to absurd results. For example, under plaintiff's interpretation, an employee who steals cash from an office safe would not be guilty of misconduct so long as the police eventually return the cash to the employer. Nor would a restaurant employee who refuses to wash his hands after using the bathroom be guilty of misconduct, so long as customers did not become ill as a result.

¶ 41    Plaintiff's violation of Strout's biosecurity rules constituted misconduct within the meaning of section 602(A) of the Act because it had the potential to cause harm to Strout. Specifically, had plaintiff continued his rule violation to its logical conclusion by reentering the clean area without showering through, he could have carried bacterial contaminants into the clean area and infected the pigs with disease. The Board's decision was not clearly erroneous.

¶ 42                                    III. CONCLUSION

¶ 43    For the foregoing reasons, we reverse the circuit court's judgment and confirm the decision of the Board.

¶ 44    Circuit court reversed; Board confirmed.