# Illinois Official Reports

## Appellate Court

<hr>

### *Petrovic v. Department of Employment Security*, 2014 IL App (1st) 131813

<hr>

| | |
|---|---|
| Appellate Court Caption | ZLATA PETROVIC, Plaintiff-Appellee, v. THE DEPARTMENT OF EMPLOYMENT SECURITY, DIRECTOR OF EMPLOYMENT SECURITY, and THE BOARD OF REVIEW OF THE DEPARTMENT OF EMPLOYMENT SECURITY, Defendants-Appellants (American Airlines, Defendant). |
| | |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-1813 |
| | |
| Filed<br>Rehearing denied | September 19, 2014<br>October 20, 2014 |
| | |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court reversed a decision of the trial court that reversed the denial by the Board of Review of the Department of Employment Security of plaintiff's claim for unemployment benefits on the ground that she was discharged from her position as a tower planner for an airline for misconduct based on leaving her position in the tower to board a plane to speak to a flight attendant and a gate agent about getting an upgrade and a bottle of champagne for a friend of a friend, notwithstanding plaintiff's contentions that the Board lacked standing to appeal because her employer did not appeal the trial court's decision and that she did not know her conduct violated her employer's policies, since the legislature intended to confer standing on the Department of Employment Security, its Director, and the Board of Review to prosecute appeals from adverse trial court decisions, even if the employer does not appeal, and the Board's finding that plaintiff's actions constituted misconduct was not clearly erroneous. |
| | |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-L-51037; the Hon. Robert Lopez Cepero, Judge, presiding. |

| | |
|---|---|
| Judgment | Reversed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro and Carolyn E. Shapiro, Solicitors General, and Timothy K. McPike, Assistant Attorney General, of counsel), for appellants. |
| | Martin Whittaker, Timothy Huizenga, and Miriam Hallbauer, both of LAF Chicago, for appellee. |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion. Justices Gordon and Reyes concurred in the judgment and opinion. |

**OPINION**

¶ 1    In January 2012, plaintiff Zlata Petrovic was fired from defendant American Airlines (American) after she gave a gift and a first class upgrade to a passenger without authorization. Petrovic filed a claim for unemployment benefits with defendant Illinois Department of Employment Security (the Department). Defendant Board of Review (Board) denied Petrovic's claim on the ground that she was discharged for misconduct. Petrovic filed a complaint for administrative review in the trial court, and the trial court reversed the Board's finding.

¶ 2    The state defendants appeal, arguing that the Board's decision finding that Petrovic was discharged for misconduct and denying her claim was not clearly erroneous. Additionally, Petrovic asserts that the state defendants lack standing to appeal the trial court decision when Petrovic's employer, American, is not participating in the appeal.

¶ 3    Plaintiff was employed by American from June 1988 to January 2012. At the time of her termination, plaintiff worked as a tower planner for the airline. Plaintiff was discharged in January 2012 for misconduct. Plaintiff filed a claim for unemployment benefits with the Department.

¶ 4    In February 2012, American filed a letter in response to plaintiff's claim. The letter stated that plaintiff was "discharged for violation of a reasonable and known policy." The incident occurred on January 1, 2012.

> "The claimant left her work area without her manager's approval to secure an undocumented upgrade for a friend of a friend. The claimant is not authorized to offer upgrades. During this exchange she did not collect the required fees associated with this upgrade, (-$7,143.50 discrepancy), failed to advise the agent working the flight, and failed to advise the load control of the upgrade. She was previously issued a performance discussion on July 14th, 2011 regarding being out of her work area.
>
> Only authorized employees may issue an upgrade and employees are expected to remain in their work area during the course of their shift unless given permission by

- 2 -

their manager to leave. The claimant was made aware of this policy through PC based training."

¶ 5        In March 2012, the claims adjudicator denied plaintiff's request for unemployment benefits, finding that plaintiff was ineligible because she was discharged for misconduct connected with work. Plaintiff filed a request for reconsideration and appealed to the Department's referee.

¶ 6        On April 18, 2012, a telephone hearing was conducted by an administrative law judge. Both plaintiff and American participated without counsel. Bob Cumley, plaintiff's supervisor, appeared as American's representative.

¶ 7        Cumley testified that on January 1, 2012, plaintiff ordered a bottle of champagne for a passenger traveling to London Heathrow. Plaintiff also went downstairs to accommodate the passenger with the champagne or take it from catering. Plaintiff also requested an upgrade for the passenger from business class to first class without following policies and procedures. Plaintiff went to the gate and asked gate agents and flight attendants if it was possible to upgrade the passenger. Plaintiff did not receive permission for her actions. Cumley stated that American does "not give first class seats away."

¶ 8        Cumley further stated that a passenger service report filed at the end of the shift indicated that plaintiff told the flight attendant that the upgrade was for a friend of a friend and she "just wanted to make the passenger feel special." Cumley said that plaintiff's duties did not have anything to do with upgrades or making passengers feel special. Her position dealt with the movement of the planes. Cumley also testified that the procedure for moving a passenger also affects the load audit necessary for an accurate weight and balance number. This weight issue can be "a very large issue when it comes to moving an airplane safely."

¶ 9        Plaintiff testified at the hearing that the passenger was a friend of a friend from another airline. The friend called and asked if there was anything plaintiff could do and she thought she could probably get a bottle of champagne and ask for an upgrade. She asked catering for the champagne, and no one told her no or said they no longer gave champagne to passengers. She stated that "we used to do these things in the past." Plaintiff then went downstairs and asked the flight attendant if it was possible to upgrade a person she knew and was told, "Oh, no problem." Plaintiff left the airplane and advised the gate agent that the upgrade might happen. Plaintiff said that "anybody could have said, 'no, we don't do this.' "

¶ 10        Plaintiff stated that the "documents from witnesses" showed that she did not upgrade the passenger herself and she did not "have the authority and the action does not meet the definition of misconduct." When asked by Cumley if she asked a member of management, plaintiff responded that she was not aware that she needed to do so because "multiple times we solve our own problems."

¶ 11        In April 2012, the administrative law judge affirmed the decision of the local office that plaintiff was ineligible for unemployment benefits.

> "The evidence showed that the employer discharged the claimant for misconduct within the meaning of section 602A [of the Unemployment Insurance Act (820 ILCS 405/602(A) (West 2010))]. Employers cannot have rules covering every improper act by an employee. There are some acts of misconduct that are so serious and so commonly accepted as wrong that employers need not have rules covering them. In this case, the claimant's action in giving away the employer's champagne and a free

upgrade to first class was unacceptable by any standard. Her action resulted in financial loss to the employer. Because of these considerations the claimant's actions amount to misconduct within the meaning of Section 602A."

¶ 12    In April 2012, plaintiff appealed the administrative law judge's decision to the Board. In June 2012, the Board issued its decision affirming the administrative law judge, finding that the decision was supported by the record and the law. The Board stated that it found the record adequate and it was unnecessary to take further evidence.

¶ 13    In July 2012, plaintiff filed a complaint for administrative review in the trial court. In May 2013, the trial court issued a written order reversing the Board's decision.

> "The Court cannot find any competent evidence in the record that would support a finding that Plaintiff gave the passenger champagne or that Plaintiff herself moved the passenger to first class. Mere speculation by someone who did not have personal knowledge of the incident does not constitute competent evidence."

¶ 14    This appeal followed.

¶ 15    Initially, plaintiff contends on appeal that the Department, the Director, and the Board lack standing to appeal the trial court's decision because American did not appeal. Relying on *Speck v. Zoning Board of Appeals*, 89 Ill. 2d 482 (1982), plaintiff argues that the Department as the agency that participated at the administrative level cannot appeal a reversal of its own decision.

¶ 16    In *Speck*, the supreme court held that the zoning board's "obligation to the public is fully discharged when it conducts a hearing and, with due consideration to the public interest, determines the propriety of granting or denying a variation." *Id*. at 486. "Its responsibility to protect the public interest does not authorize the Board to act as a representative of the public for the purpose of vindicating its own decision on appeal. It is apparent that, in assuming the role of advocate, the Board's required duty of impartiality is compromised." *Id.*

¶ 17    However, the supreme court later in *Braun v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 108 Ill. 2d 119, 128 (1985), differentiated between the functions of a tribunal, such as a zoning board, and one with "extensive managerial responsibilities," such as the retirement board, which has an interest in disbursing and maintaining a pension fund.

¶ 18    Recently, the Fourth District considered and rejected the same argument advanced by plaintiff in this case. In *Farris v. Department of Employment Security*, 2014 IL App (4th) 130391, ¶ 27, the plaintiff asserted that "the Board lacks standing because its role is merely that of an impartial tribunal for claims between an employee and the employer, and the Department and its Director lack standing because they are merely trustees of the unemployment insurance fund."

¶ 19    The *Farris* court found the reasoning in *Braun* applicable to the functions of the Department.

> "As the guardians of the unemployment insurance fund, the Department and its Director have a duty to protect the fund from diminution in the form of disbursements to ineligible claimants. Private employers cannot be relied upon to serve as the fund's sole defense against unqualified claims. As the facts of this case illustrate, a claimant seeking unemployment benefits can obtain administrative review in the circuit court at virtually no cost. Here, the circuit court (for whatever reason) even appointed counsel to represent plaintiff *pro bono*. The corporate employer, on the other hand, *must* retain

private counsel if it wishes to participate at the circuit court level. See, *e.g.*, *Downtown Disposal Services, Inc. v. City of Chicago*, 407 Ill. App. 3d 822, 832, 943 N.E.2d 185, 194 (2011) ('[C]orporations must appear in court through a licensed attorney, rather than a layperson.'). In the face of an erroneous claim by an ineligible claimant, the cost to an employer of paying out the claim will almost always be less than the cost of hiring legal counsel to defend against the claim at the circuit court level–much less the appellate court level." (Emphasis in original.) *Id.* ¶ 29.

¶ 20      The court further observed that the Unemployment Insurance Act stated that the Director " 'shall be deemed to have been a party to any administrative proceeding before the Board of Review and shall be represented by the Attorney General in any judicial action involving any such decision.' " (Emphasis omitted.) *Id.* ¶ 30 (quoting 820 ILCS 405/1100 (West 2012)). "The legislature has also entrusted the Department and its Director with protecting the fund and handling its assets in accordance with the Act." *Id.* ¶ 31 (citing 820 ILCS 405/2100(A) (West 2012)).

> "If 'extensive managerial responsibilities' are ever sufficient to confer standing upon an administrative agency to prosecute an appeal, as the supreme court held in *Braun* (*Braun*, 108 Ill. 2d at 128, 483 N.E.2d at 12), then that criterion surely applies in this case. Given the above-cited provisions of the Act, the practical need for an advocate to defend the decisions of the Board in the circuit court and guard against erroneous payouts from the unemployment fund, and the extensive managerial responsibilities of the Department and its Director, we conclude that the legislature intended to confer standing upon the Department, its Director, and the Board to prosecute appeals from adverse circuit court decisions." *Id.*

¶ 21      We find the analysis in *Farris* to be well reasoned and adopt it in the instant case. We additionally observe that in *Speck*, the supreme court specifically considered the statutory language granting the zoning board's powers and authority. The court noted that under the applicable statute, the zoning board "is intended to function in an adjudicatory or quasijudicial capacity. Primarily, the Board is empowered to conduct hearings, render decisions regarding applications for variations, and decide appeals from orders of the zoning administrator. It is noteworthy that nowhere in the ordinance is the Board authorized, expressly or implicitly, to assume the role of advocate for the purpose of prosecuting an appeal." *Speck*, 89 Ill. 2d at 485.

¶ 22      In contrast, the Unemployment Insurance Act, as quoted in *Farris*, clearly grants the Director the ability to participate in judicial actions as a party. See 820 ILCS 405/1100 (West 2012). This distinction in the statutory language is significant and indicates the legislature's intent for the Department, the Board, and the Director to be able to prosecute the appeal of claims made to its fund. Accordingly, we hold that the Department, the Board, and the Director have standing to bring this appeal.

¶ 23      We now turn to the issue on appeal. The Board argues that it did not err in finding that plaintiff was discharged for misconduct when she left her post and boarded the airplane to procure a first class upgrade without authorization or payment and gave away a bottle of champagne.

¶ 24      When a party appeals the circuit court's decision on a complaint for administrative review, the appellate court's role is to review the administrative decision rather than the circuit court's decision. *Siwek v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 324 Ill. App. 3d 820, 824 (2001). The Administrative Review Law provides that judicial review of an

administrative agency decision shall extend to all questions of law and fact presented by the entire record before the court. 735 ILCS 5/3-110 (West 2010). Further, "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." 735 ILCS 5/3-110 (West 2010). "The standard of review, 'which determines the degree of deference given to the agency's decision,' turns on whether the issue presented is a question of fact, a question of law, or a mixed question of law and fact." *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 471 (2005) (quoting *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001)).

¶ 25 "A mixed question of law and fact asks the legal effect of a given set of facts." *Comprehensive Community*, 216 Ill. 2d at 472. Stated another way, a mixed question is one in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or whether the rule of law as applied to the established facts is or is not violated. *AFM Messenger*, 198 Ill. 2d at 391. A mixed question of law and fact is reviewed under the clearly erroneous standard. *Comprehensive Community*, 216 Ill. 2d at 472. "Whether an individual was properly terminated for misconduct in connection with her work is a question that involves a mixed question of law and fact, to which we apply the clearly erroneous standard of review." *Woods v. Illinois Department of Employment Security*, 2012 IL App (1st) 101639, ¶ 19.

¶ 26 The clearly erroneous standard of review lies between the manifest weight of the evidence standard and the *de novo* standard, and as such, it grants some deference to the agency's decision. *AFM Messenger*, 198 Ill. 2d at 392. "[W]hen the decision of an administrative agency presents a mixed question of law and fact, the agency decision will be deemed 'clearly erroneous' only where the reviewing court, on the entire record, is 'left with the definite and firm conviction that a mistake has been committed.' " *AFM Messenger*, 198 Ill. 2d at 395 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). "If there is any evidence in the record to support the Board's decision, that decision is not contrary to the manifest weight of the evidence and must be sustained on review." *Woods*, 2012 IL App (1st) 101639, ¶ 16.

¶ 27 "The Unemployment Insurance Act (Act) (820 ILCS 405/100 *et seq.* (West 2004)) was enacted to provide economic relief to individuals who become involuntarily unemployed." *Manning v. Department of Employment Security*, 365 Ill. App. 3d 553, 557 (2006). The individual seeking unemployment benefits carries the burden of proving eligibility. *Id.* However, individuals who are discharged for misconduct are ineligible for benefits. *Id.* (citing 820 ILCS 405/602(A) (West 2004)). "Misconduct can be premised on either a particular incident of a violation of an employer's rules that triggered the employee's discharge, or the employee's cumulative violations of the employer's rules taken as a whole." *Alternative Staffing, Inc. v. Illinois Department of Employment Security*, 2012 IL App (1st) 113332, ¶ 30.

¶ 28 Under section 602(A), three elements must be proven to establish misconduct: "(1) there was a deliberate and willful violation of a rule or policy of the employing unit, (2) the rule or policy was reasonable, and (3) the violation either harmed the employer or was repeated by the employee despite a previous warning or other explicit instruction from the employing unit." *Woods*, 2012 IL App (1st) 101639, ¶ 19 (citing 820 ILCS 405/602(A) (West 2008)).

¶ 29 "In determining whether an employer was harmed, the employee's conduct should be viewed in the context of potential harm, and not in the context of actual harm." *Manning*, 365

Ill. App. 3d at 557. "Additionally, an employer is not required to prove the existence of a reasonable rule by direct evidence, and a court may find the existence of a reasonable rule 'by a commonsense realization that certain conduct intentionally and substantially disregards an employer's interests.' " *Id.* (quoting *Greenlaw v. Department of Employment Security*, 299 Ill. App. 3d 446, 448 (1998)). "Standards of behavior that an employer has a right to expect constitute a reasonable rule or policy." *Id.* "Such a rule or policy does not need to be written or otherwise formalized." *Id.* "Willful conduct stems from an employee's awareness of, and conscious disregard for, a company rule." *Livingston v. Department of Employment Security*, 375 Ill. App. 3d 710, 716 (2007).

¶ 30   Here, it is undisputed that plaintiff sought an upgrade for a friend of a friend without management authorization or payment. Plaintiff admitted that she left her position in the tower and boarded the airplane, speaking to the flight attendant and gate agent regarding the upgrade. Plaintiff asserts she was unaware that these actions were against American's policies and procedures. American stated in the record that the upgrade from business class to first class was a cost difference of approximately $7,100, and the airline did not "give away" first class seats. American also noted that the change in seat can affect the weight and load balance of the airplane which is important in the airplane's safe operation. American's written response in the record indicated that plaintiff was made aware of the policy that only authorized employees may issue an upgrade "through PC based training." Plaintiff only responds that she was unaware of any rule or policy. She does not dispute American's statement in the record that she received the computer-based training.

¶ 31   Further, as previously noted, reasonable rules are not required to be proven by direct evidence. Based on the record before us, a reasonable rule would require an employee that lacks authorization to offer an upgrade to seek approval before taking such action. Plaintiff was aware that she did not have authority to perform the actions she took and only offered a defense that others could have declined her and she did not know she could not offer an upgrade without payment or authorization. Additionally, plaintiff's action caused a potential loss of $7,100 to American and potential safety concerns when the weight balance differs from the listed seat assignments. Plaintiff engaged in misconduct as defined in section 602(A).

¶ 32   As the administrative law judge found:

"There are some acts of misconduct that are so serious and so commonly accepted as wrong that employers need not have rules covering them. In this case, the claimant's action in giving away the employer's champagne and a free upgrade to first class was unacceptable by any standard. Her action resulted in financial loss to the employer."

¶ 33   After reviewing the entire record, we cannot say that the Board erred in finding that plaintiff was terminated for misconduct. The Board's determination that plaintiff's actions which caused a $7,100 upgrade to first class to be issued without management approval constituted misconduct such that she was disqualified to receive unemployment benefits was not clearly erroneous.

¶ 34   Based on the foregoing reasons, we reverse the judgment of the circuit court of Cook County and reinstate the order of the Board of Review.

¶ 35   Reversed.